## Effa BRALEY

v.

## The BERKSHIRE MUTUAL INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1981.

Decided Feb. 2, 1982.

Murphy & Coyne, Coleman G. Coyne, Jr. (orally), Lewiston, for plaintiff.

Norman & Hanson, Peter J. DeTroy, III (orally), Portland, for defendant.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

The Defendant, The Berkshire Mutual Insurance Company, appeals and the Plaintiff, Effa Braley, cross-appeals from a final judgment entered in Superior Court, Androscoggin County on February 9, 1981, pursuant to a jury verdict upon the Plaintiff's claim against an uninsured motorist, Gregory Provencher. The jury awarded the Plaintiff compensatory damages of $1,500 and punitive damages of $16,500 on her claim against the uninsured motorist. The Defendant company asserts that the uninsured motorist coverage [1] under its automobile liability policy contract with the Plaintiff does not encompass an award of punitive damages. The Plaintiff claims that the award of compensatory damages was inadequate and that the Superior Court erred in not granting a new trial on this issue.

We affirm so much of the judgment as awards compensatory damages. We sustain the Defendant's appeal as to so much of the judgment as awards punitive damages.

From the testimony presented, the jury could have found the following facts. On September 4, 1977, an automobile operated by Gregory Provencher struck the rear of an automobile operated by the Plaintiff while both automobiles were traveling west on the Veterans Memorial Bridge in Auburn. The Plaintiff suffered numerous lacerations, temporary back pain and some broken ribs; she sustained two permanent scars, each a few centimeters in length, on her left temple.

At the time of this collision, the Plaintiff was the named insured in a motor vehicle liability policy issued by the Defendant company, which policy covered the 1972 American Motors Company Gremlin that the Plaintiff was operating at the time of the collision. In the Superior Court the Plaintiff claimed that under the policy issued by the Defendant company she was entitled to, and the Defendant company was liable for, compensatory damages of $25,000 and punitive damages of $25,000. The Plaintiff sought compensation for medical expenses and for pain, suffering, and embarrassment from the injuries. She did not seek compensation for lost wages. She sought punitive damages for Gregory

---

1. The policy authorizes recovery of:
    ...all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness, or disease, includ-

ing death resulting therefrom, hereinafter called "bodily injury", sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . . .

Provencher's reckless operation of his automobile.

At trial the parties stipulated that the Plaintiff was not at fault for the collision, that she sustained permanent facial scars, and that her medical bills resulting from the collision were $655.71.

■ We first address the compensatory damages award. The assessment of damages is a factual matter generally within the sole province of the jury. We must uphold the verdict unless it has no rational basis in the record or the jury acted under some bias, prejudice, or improper influence, or reached its verdict by compromise.[2]

■ In reviewing the evidence in the light most favorable to the Plaintiff, the successful party at trial, we find a rational basis for the compensatory damages award.[3] The parties stipulated to the jury that the Plaintiff's medical expenses totaled $655.71. Burton Olmstead, M.D., a witness for the Defendant, testified that after cosmetic surgery costing $300–$400 the facial scars would be inconspicuous to a casual observer at a distance of 5 to 6 feet. The Plaintiff testified that she returned to work one month after the accident. Testimony of the Plaintiff constituted proof of her pain and suffering. The weight of these statements depended upon the jury's evaluation of the Plaintiff's credibility.

■ As a second issue on this appeal the Defendant company challenges the award of punitive damages, asserting that such damages are excluded from coverage under the uninsured motorist provision of the policy issued to the Plaintiff by the Defendant company.

Plaintiff's award for punitive damages under the uninsured motorist provision of her insurance policy should be vacated.[4] The language of the contract provides that the insurance company shall "pay all sums which the Insured ... shall be legally entitled to recover as damages ... because of bodily injury ... sustained by the insured." This language reflects the wording of the uninsured motorist statute, 24–A M.R.S.A. § 2902 (Supp.1980), which provides that no liability insurance policy shall be issued

unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury ... resulting from the ownership, maintenance or use of such ... vehicle.

Courts in other jurisdictions have construed the phrase "all sums for bodily injury" or "because of bodily injury" to cover only awards of actual or compensatory damages. *See, e.g., Casperson v. Webber,* 298 Minn. 93, 100, 213 N.W.2d 327, 331 (1973); *Brown v. Western Casualty & Surety Company,* 484 P.2d 1252, 1253 (Colo. App.1971); *Crull v. Gleb,* 382 S.W.2d 17, 23 (Mo.App.1964); *Laird v. Nationwide Insurance Co.,* 243 S.C. 388, 134 S.E.2d 206 (1964). That is the better construction because punitive damages are not awarded as compensation "for bodily injury," even though proof of some injury is generally a prerequisite for an award of punitive damages. Punitive damages, as such, are awarded, however, "for the protection of society and societal order," *Kaklegian v. Zakarian,* 123 Me. 469, 123 A. 900 (1924), and to deter similar misconduct by the defendant and others. *Foss v. Maine Turnpike Authority,* Me., 309 A.2d 339

**2.** *Cope v. Sevigny,* Me., 289 A.2d 682 (1972). *See also Binette v. Deane,* Me., 391 A.2d 811, 814 (1978).

**3.** *See Binette v. Deane, supra* at 813; *Fossett v. Durant,* 150 Me. 413, 416, 113 A.2d 620, 622 (1955).

**4.** The continued vitality of the doctrine of punitive damages was not raised as an issue in this case. We assume for the purposes of this opinion that punitive damages may be awarded by the court in some instances without explicit statutory authorization. We do not, however, necessarily accept that proposition. The rule was formulated in the nineteenth century by a divided court, *Pike v. Dilling,* 48 Me. 539 (1861) and may not have been thoroughly examined since then. Accordingly, the general question of the basis for a judicially created rule of punitive damages is open to reconsideration in light of modern considerations and authorities.

(1973). The *Laird* decision, *supra*, excluded punitive damages from awards under an "all sums" clause in an uninsured motorist policy. A highly regarded writer on insurance law has commented favorably on the *Laird* rationale:

> [T]he decision reached by the court [in Laird] seems reasonable in that the endorsement is primarily designed to provide compensation, while punitive damages are primarily directed either at penalizing the tortfeasor or deterring the tortfeasor and others from committing like offenses in the future.

A. Widis, *A. Guide to Uninsured Motorist Coverage* § 2.53 at 100–01 (1969).

This interpretation of the contract language to exclude punitive damages is further bolstered by our observations two years ago concerning the Legislature's intent in passing Maine's uninsured motorist statute, upon which the contract provision is based. In *Wescott v. Allstate Insurance*, Me., 397 A.2d 156 (1979), our Court directed that the statute be construed to assure that a person injured by an uninsured motorist be able to recover up to "the total amount of his damages." *Id.* at 167. What is meant by the total amount of his damages is made clear by the opinion:

> The obvious design of our uninsured vehicle coverage statute is to protect a responsible injured motorist against the hazards presented by the operation of motor vehicles where injuries are inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation for the injuries caused in the accident. The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance company for a premium.

*Id.* at 166. We further stated that the legislation was intended to protect an insured "to the extent of his actual loss." *Id.* at 170. Punitive damages compensate neither actual loss nor injuries which would otherwise go without redress. Therefore, insurance companies providing coverage under provisions mandated by the uninsured motorist statute should not be charged under those provisions with liability for punitive damages.

■ Under Maine law deterrence of the tortfeasor is "*the* proper justification" for an award of punitive damages. *Foss v. Maine Turnpike Authority*, Me., 309 A.2d 339, 345 (1979) (emphasis in original). Allowing punitive damages to be awarded against an insurance company can serve no deterrent function because the wrongdoer is not the person paying the damages. This has been recognized by many courts in the context of liability insurance, *see, e.g., Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5th Cir. 1962), and by one court under an uninsured motorist provision. *Laird v. Nationwide Insurance Company, supra.*

We have heretofore disallowed an award of punitive damages against a governmental agency as a matter of public policy because of the difficulty of achieving a deterrent effect by the award:

> For when exemplary damages are exacted from a governmental agency, the penalty is inflicted not upon the wrongdoer, the agent, but upon the public itself. Accordingly, not only are innocent parties paying the price, but the deterrent function of exemplary damages is wholly negated.

*Foss v. Maine Turnpike Authority, supra*, at 346. The no-deterrence reasoning in *Foss* is similar to the reasoning used by other courts in denying punitive damages claims against insurance companies.

> And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, . . . the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.

*Northwestern National Casualty Company v. McNulty, supra*, at 440–41.

While in the liability insurance context there is at least the possibility of raising the insured's premiums thereby achieving some small deterrent effect, in the instance of uninsured motorist coverage, the claimant is the insured, so no deterrent effect is possible through the raising of premium charges.

Although an insurance company theoretically has a right of recovery against the tortfeasor under an uninsured motorist provision, the probability of such a recovery is negligible. In this case, for instance, the tortfeasor's whereabouts are unknown. Such is precisely the case contemplated by the statute which was designed to protect against the motorist "who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation." *Wescott v. Allstate Insurance, supra,* at 166. Realistically, then, no deterrent effect can be anticipated from an award of punitive damages against an insurance company under an uninsured motorist provision.

■ Moreover, the amount of punitive damages under Maine law is in part determined by its deterrent effect and must therefore bear some relationship to the actual wealth of the defendant. *See, e.g., Allen v. Rossi,* 128 Me. 201, 205, 146 A. 692 (1929); *Webb v. Gilman,* 80 Me. 177, 188, 13 A. 688, 688–89 (1888). Therefore, one of the traditional measures of punitive damages would often be lacking if an uninsured motorist was permitted to recover them.

The entry must be:

So much of the judgment as reflects an award of compensatory damages affirmed.

So much of the judgment as reflects an award of punitive damages vacated.

All concurring.