VIOLETTE, Justice.
 

 This action arises out of the serious injuries sustained by the plaintiff in an automobile collision involving the defendant. After a jury trial, the Superior Court, Andros-coggin County, entered a final judgment ordering the defendant to pay the plaintiff $50,000 in compensatory damages and $22,-000 in punitive damages. On appeal, the defendant challenges only the award of punitive damages. First, the defendant urges this Court to abolish common law punitive damages in Maine. Alternatively, the defendant contends that punitive damages are inappropriate as a matter of law on the facts underlying this case. Finally, should both of those arguments fail to persuade the Court, the defendant argues that several errors in the trial below nevertheless require reversal of the punitive damages award.
 

 In several recent decisions, this Court has indicated its willingness, should the proper occasion arise, to re-examine “the judicially created rule of punitive damages ... in light of modern considerations and authorities.”
 
 Braley v. Berkshire Mutual Insurance Co.,
 
 440 A.2d 359, 361 n. 4 (Me.1982);
 
 see, e.g., Hanover Insurance Co. v. Hayward,
 
 464 A.2d 156, 158 n. 2 (Me.1983);
 
 Oliver v. Martin,
 
 460 A.2d 594, 595 n. 2 (Me.1983). This case presents such an occasion.
 
 [1]
 
 We refuse to abolish common law punitive damages in Maine. We do take this opportunity, however, to redefine and clarify the type of tortious conduct necessary to justify an award of exemplary damages. Furthermore, we heighten the standard of proof incumbent upon a plaintiff seeking such an award. We hold that, in order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted with malice. We conclude that the conduct of the defendant in this case does not justify the imposition of an exemplary award.
 
 [2]
 
 Accordingly, we sustain the appeal.
 

 I.
 

 On July 6, 1977 the plaintiff, Hattie Tut-tle, was seriously injured when a Lincoln driven by the defendant, Ralph Raymond, III, struck the Plymouth in which she was a passenger. The force of the impact sheared the Plymouth in half. Based on the evidence presented at trial, the jury could have found that the defendant was driving at an excessive speed in a 25 mile per hour zone when he struck the Plymouth, and that the defendant went through a red light just before the impact.
 

 The defendant conceded liability at trial and focused instead on the amount of damages the jury should properly award.
 
 *1339
 
 From the outset of the litigation, the defendant asserted both that punitive damages should not be recognized under the law of Maine and that, in any event, the facts of this case did not generate the issue of punitive damages. Nevertheless, the trial court submitted this issue to the jury, and refused to disturb the jury’s decision to award $22,000 in exemplary damages.
 

 II.
 

 Vigorous criticism of the doctrine of punitive damages is hardly a recent development in the field of jurisprudence. Arguments against the availability of such awards have been circulating for one hundred years and longer.
 
 [3]
 
 During those hundred years, commentators have exhaustively analyzed the doctrine.
 
 [4]
 
 Nonetheless, a substantial majority of jurisdictions today allow common law punitive damages in appropriate cases as a recovery beyond the amount necessary to compensate the plaintiff, for the purpose of deterrence or punishment or both.
 
 See
 
 J. Ghiardi & J. Kircher,
 
 Punitive Damages: Law and Practice
 
 § 4.01, at 4-1, 4-2 (1981);
 
 see also id.
 
 at § 4.16, table 4-1, at 18-22 (Supp.1984).
 

 The law of Maine on this issue is in accord with the position of this substantial majority. Since adopting the doctrine of punitive damages in
 
 Pike v. Dilling,
 
 48 Me. 539 (1861), this Court has frequently and consistently reaffirmed the availability of such awards at common law under the appropriate circumstances.
 
 [5]
 
 “It would be simplistic to characterize [this position] as mere blind adherence to an outmoded principle. Rather, the doctrine of punitive damages survives because it continues to serve the useful purposes of expressing society’s disapproval of intolerable conduct and deterring such conduct where no other remedy would suffice.” Mallor and Roberts,
 
 supra
 
 note 4, at 641;
 
 see Braley v. Berkshire Mutual Insurance Co.,
 
 440 A.2d 359, 361, 362 (Me.1982);
 
 Foss v. Maine Turnpike Authority,
 
 309 A.2d 339, 345 (Me.1973);
 
 see also
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 647-49; Note,
 
 supra
 
 note 4, at 451-55.
 

 The defendant in the case at bar contends that we should nevertheless abandon the judicially created rule of punitive damages in this state. In support of this position, the defendant proffers several arguments, which we consider seriatim. After careful consideration, we conclude that the doctrine of punitive damages retains its viability, and we refuse to abrogate the availability of exemplary awards at common law in Maine.
 

 One objection raised by the defendant is that the civil law is ill-suited to accomplish the goals that purportedly justify the doctrine of punitive damages. The defendant contends that the proper function of the civil tort law is to make plain
 
 *1340
 
 tiffs whole, and that grave problems arise when it is used to extract from defendants something beyond full compensation for the victim. The defendant asserts that the primary purpose allegedly served by the doctrine of punitive damages, deterrence through punishment, is more properly left to the criminal law with its attendant procedural safeguards.
 

 The bright line that the defendant attempts to interpose between the civil and the criminal law is in fact artificial. The courts of this country historically have not restricted the civil law to a compensatory function. In 1851, the United States Supreme Court, relying on over a century of judicial precedent, observed: “By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of a penalty or punishment, given to the party injured.”
 
 Day v. Woodworth,
 
 54 U.S. (18 How.) 363, 371, 14 L.Ed. 181 (1851). Use of the civil law to shape social behavior is both logical and desirable. There are many instances where the criminal law alone is inadequate to achieve the desired deterrent effect.
 
 See
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 655-58. For instance, even when the defendant’s conduct violates a criminal statute, it may be a crime that is rarely prosecuted, or the maximum applicable penalty may not correspond to the actual outrageousness of the conduct and the defendant’s ability to pay.
 
 See id.
 
 at 656-57. Of course, where a criminal sanction does constitute an adequate deterrent in a given case, there is no justification for adding a civil penalty in the form of punitive damages.
 
 See id.
 
 at 658; Note,
 
 supra
 
 note 4, at 456-57. This potential problem, however, does not require the wholesale abrogation of the doctrine of punitive damages. A more sensible solution is to allow the fact finder to consider evidence of any criminal punishment imposed for the conduct in question as a mitigating factor on the issue of punitive damages,
 
 [6]
 
 a step already taken by this Court.
 
 See Hanover Insurance Co. v. Hayward,
 
 464 A.2d 156, 159 (Me.1983).
 
 [7]
 

 Furthermore, the lack of certain procedural safeguards, which are required in criminal prosecutions,
 
 [8]
 
 does not render the civil law unfit to serve this deterrent function. The statute books provide many examples where penalties, in the form of multiple damages payable to a private par
 
 *1341
 
 ty, are imposed in civil actions for the purpose of discouraging undesirable conduct.
 
 [9]
 
 The absence of these procedural safeguards presents no constitutional bar to the imposition of punitive damages in a civil action.
 
 See Malandris v. Merrill, Lynch, Pierce, Fenner & Smith,
 
 703 F.2d 1152, 1173 (10th Cir.1981) (quoting
 
 Curtis Publishing Co. v. Butts,
 
 388 U.S. 130, 159, 87 S.Ct. 1975, 1993, 18 L.Ed.2d 1094 (1967)). The reason for requiring such safeguards in the criminal arena, the threat to the defendant of incarceration or other substantial stigma, does not justify their application in actions for punitive damages.
 

 In a related argument, the defendant criticizes the doctrine of punitive damages because it permits a person to be punished twice for the same offense. The defendant observes that in the case at bar he was
 
 both
 
 convicted and fined in a criminal proceeding
 
 and
 
 assessed with punitive damages in a subsequent civil proceeding based upon the same conduct.
 
 [10]
 
 The defendant contends that the assessment of an exemplary award in addition to criminal punishment for the same conduct offends the constitutional prohibition against placing a defendant twice in jeopardy. The defendant acknowledges that we recently rejected this precise argument in
 
 Hanover Insurance Co.,
 
 464 A.2d at 159, but urges us to abandon the reasoning articulated in that case in favor of a new rule that would prevent such double punishment.
 
 [11]
 

 “In the constitutional sense,” jeopardy is a technical term that encompasses only the risk inherent in proceedings that are “essentially criminal.”
 
 Breed v. Jones,
 
 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). Accordingly, a civil action for punitive damages cannot infringe on a defendant’s constitutional right to be free from double jeopardy.
 
 Hanover Insurance Co.,
 
 464 A.2d at 159;
 
 E.F. Hutton and Co. v. Anderson,
 
 42 Colo.App. 497, 499, 596 P.2d 413, 415 (1979);
 
 Svejcara v. Whitman,
 
 82 N.M. 739, 741, 487 P.2d 167, 169 (N.M.Ct.App.1971);
 
 see Helvering v. Mitchell,
 
 303 U.S. 391, 398-99, 58 S.Ct. 630 (1938),
 
 cited with approval in Breed,
 
 421 U.S. at 528, 95 S.Ct. at 1785.
 
 [12]
 
 A claim for punitive damages is based upon a
 
 private
 
 wrong, and is clearly distinguishable from a criminal prosecution, which is brought solely on the behalf of the public.
 
 Nappe v. Anschelewitz, Barr, Ansell & Bonello,
 
 97 N.J. 37, 50, 477 A.2d 1224, 1231 (1984);
 
 Svejcara,
 
 82 N.M. at 741, 487 P.2d at 169;
 
 see Moody v. State ex rel. Payne,
 
 355 So.2d 1116, 1120 (Ala.1978) (“it is well settled that exemplary damages are not to be equated with criminal punishment”). The state and federal constitutional prohibitions
 
 *1342
 
 against double jeopardy present no bar to actions for punitive damages.
 
 [13]
 

 In the absence of constitutional compulsion, we can see no reason to bar actions for punitive damages based upon the fact that the underlying conduct is also subject to criminal prosecution.
 
 [14]
 
 Such a step would “[fall] short of a principled approach.” Mallor and Roberts,
 
 supra
 
 note 4, at 656. As we noted earlier,
 
 [15]
 
 “the criminal system cannot always adequately fulfill its role as an enforcer of society’s rules_”
 
 Id.
 
 at 658;
 
 see Grimshaw v. Ford Motor Co.,
 
 119 Cal.App.3d 757, 820, 174 Cal.Rptr. 348, 389 (1981);
 
 Kelsay v. Motorola, Inc.,
 
 74 Ill.2d 172, 186, 23 Ill.Dec. 559, 384 N.E.2d 353, 359 (1978);
 
 Roshak v. Leathers,
 
 277 Or. 207, 213-16, 560 P.2d 275, 278-79 (1977). We therefore prefer a more flexible rule, whereby the fact finder may consider any criminal punishment imposed for the conduct in question as a mitigating factor on the issue of punitive damages.
 
 Hanover Insurance Co.,
 
 464 A.2d at 159.
 

 Another objection to punitive damages raised by the defendant is that they bestow a windfall upon the plaintiff. As the defendant observes, such damages are awarded in Maine in excess of any amount necessary to compensate the plaintiff.
 
 See Braley v. Berkshire Mutual Insurance Co.,
 
 440 A.2d 359, 361, 362 (Me.1982). The defendant contends that a plaintiff injured by a tort is entitled to be made whole, and not to be put in a better position than if the tort had never occurred.
 
 See, e.g., Collens v. New Canaan Water Co.,
 
 155 Conn. 477, 488-89, 234 A.2d 825, 831-32 (1967) (“punitive” damages are compensatory in function, and may not exceed costs of litigation);
 
 Vratsenes v. N.H. Auto, Inc.,
 
 112 N.H. 71, 73, 289 A.2d 66, 68 (1972) (“no damages other than compensatory are to be awarded”).
 

 We find, however, that the extra recovery afforded to plaintiffs by punitive damages, rather than constituting a “windfall,” serves a useful purpose. The potential for recovering an exemplary award provides an incentive for private civil enforcement of society’s rules against serious misconduct.
 
 [16]
 

 See
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 649-50. As noted earlier,
 
 [17]
 
 the civil law effectively augments the criminal law in deterring intolerable conduct. The doctrine of punitive damages encourages the use of civil actions by private parties in response to such conduct, especially when the prospective compensatory recovery is
 
 *1343
 
 low or the expected cost of litigation is high.
 
 [18]
 

 See id.
 

 The defendant next argues that the doctrine of punitive damages invites abuse because there is no objective standard by which to determine the amount of a proper award.
 
 See
 
 Ellis,
 
 supra
 
 note 4, at 53-57. According to the defendant, the jury is left to speculate concerning the appropriate amount of punitive damages in a given case, with the result of arbitrary and excessive awards. The defendant contends that this is a flaw in the doctrine that outweighs any justification for allowing exemplary awards.
 

 In fact, however, the lack of any precise formula by which punitive damages can be calculated is one of the important assets of the doctrine. “Punitive damages ... can be individualized to provide a deterrent that will be adequate for each case.” Mallor and Roberts,
 
 supra
 
 note 4, at 657. Such flexibility can ensure a sufficient award in the case of a rich defendant and avoid an overburdensome one where thé defendant is not as wealthy.
 
 Id.
 
 at 666;
 
 see Hanover Insurance Co.,
 
 464 A.2d at 158 (to provide an effective deterrent, punitive damages should bear some relationship to the actual wealth of the defendant). Flexibility is also necessary to avoid situations where the potential benefits of wrongdoing could outweigh a known maximum liability.
 
 See
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 648-49, 666; Morris,
 
 supra
 
 note 4, at 1185-87. In short, “[although a quantitative formula would be comforting, it would be undesirable.” Mallor and Roberts,
 
 supra
 
 note 4, at 666.
 

 We, of course, do not advocate the availability of punitive damages on a completely open-ended basis. The trial court must reject a claim for punitive damages as a matter of law unless the plaintiff presents adequate proof that the defendant acted in a sufficiently culpable manner.
 
 [19]
 

 See McKinnon v. Tibbetts,
 
 440 A.2d 1028, 1031 (Me.1982). Further, even after the plaintiff has satisfied his prima facie burden on the issue of exemplary damages, the fact finder must weigh “all relevant aggravating and mitigating factors” presented by the parties, including the egregiousness of the defendant’s conduct, the ability of the défendant to pay such an award, and any criminal punishment imposed for the conduct in question.
 
 Hanover Insurance Co.,
 
 464 A.2d at 158-59;
 
 see also
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 667-69 (enumerating factors to be considered in assessing punitive damages). After such consideration, an exemplary, award is “within the
 
 sound
 
 discretion of the fact finder.”
 
 Hanover Insurance Co.
 
 464 A.2d at 158 (emphasis added). If the fact finder awards punitive damages that are excessive in light of the relevant factors, the trial court or this Court can intervene.
 
 See
 
 M.R. Civ.P. 59(a);
 
 Hall v. Edwards,
 
 138 Me. 231, 233-34, 23 A.2d 889-890 (1942);
 
 Sullivan v. McCafferty,
 
 117 Me. 1, 9, 102 A. 324, 327 (1917).
 

 
 *1344
 
 We also observe that the lack of precision in measuring appropriate exemplary awards is not a trait unique to the doctrine of punitive damages. Compensatory awards for intangible harm, such as pain and suffering, and emotional distress, are likewise not subject to any exact standard for determining an appropriate amount.
 
 See
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 646.
 

 In conclusion, we are not persuaded that we should abolish common law punitive damages in Maine.
 
 [20]
 
 It may well be, as the defendant argues, that the doctrine of punitive damages no longer serves any purpose for which it was originally intended.
 
 [21]
 

 This argument [,however,] fails to account for the fact that many legal doctrines serve purposes that differ from those for which they originally were de-veloped_ So long as a doctrine continues to serve a necessary policy goal, the fact that it has diverged from its original function does not provide a basis for abolishing the doctrine.
 
 The pertinent question is whether punitive damages continue to serve a rational policy.
 

 Mallor & Roberts,
 
 supra
 
 note 4, at 644 (emphasis added). We conclude that they do.
 

 III.
 

 Although we reject the defendant’s contention that we should abolish common law punitive damages in Maine, we perceive cogent reasons for avoiding an overbroad application of the doctrine. Notions of fairness and efficiency weigh against allowing exemplary awards where the stated goal of deterring reprehensible conduct would be furthered only marginally or not at all.
 
 See
 
 Ellis,
 
 supra
 
 note 4, at 21-33, 39-53. Rather, punitive damages should be available based only upon a limited class of misconduct where deterrence is both paramount and likely to be achieved. With this in mind, we turn to a re-examination of the type of tortious conduct that can justify an exemplary award in Maine.
 

 It is generally accepted that mere negligence cannot support an award of punitive damages. W. Prosser,
 
 Handbook of the Law of Torts
 
 10 (4th ed. 1971); Restatement (Second) of Torts § 908 comment b (1977);
 
 see McKinnon v. Tibbetts,
 
 440 A.2d 1028, 1031 (Me.1982). Beyond that, however, there has been some variation in describing the quality of tortious conduct necessary to support an exemplary award. W. Prosser,
 
 supra,
 
 at 9-10; Ellis,
 
 supra
 
 note 4, at 20, 34-37. Recent decisions of this Court have indicated that Maine law recognizes the availability of punitive damages based upon “wanton, malicious, reckless or grossly negligent conduct.”
 
 See, e.g., Oliver v. Martin,
 
 460 A.2d 594, 595 n. 2 (Me.1983);
 
 McKinnon,
 
 440 A.2d at 1031
 
 *1345
 
 n. 2;
 
 Auburn Harpswell Association v. Day,
 
 438 A.2d 234, 237 n. 2 (Me.1981) (per curiam).
 

 Such a standard is overbroad. Whatever qualitative difference exists between mere negligence and “gross” negligence, it is insufficient to justify allowing punitive damages based upon the latter class of conduct.
 
 See
 
 W. Prosser,
 
 supra,
 
 at 10 (“mere negligence ..., even though it is so extreme in degree as to be characterized as ‘gross,’ an unhappy term of ill-defined content,” is insufficient to support punitive damages); Ellis,
 
 supra
 
 note 4, at 36-37. “Gross” negligence simply covers too broad and too vague an area of behavior, resulting in an unfair and inefficient use of the doctrine of punitive damages.
 
 See
 
 Ellis,
 
 supra
 
 note 4, at 36-37, 39-53. A similar problem exists with allowing punitive damages based merely upon “reckless” conduct. “To sanction punitive damages solely upon the basis of conduct characterized as ‘heedless disregard of the consequences’ would be to allow virtually limitless imposition of punitive damages.”
 
 Miller Pipeline Corp. v. Broeker,
 
 460 N.E.2d 177, 185 (Ind.Ct.App.1984). A standard that allows exemplary awards based upon gross negligence or mere reckless disregard of the circumstances overextends the availability of punitive damages, and dulls the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct.
 

 We therefore determine that a new standard is needed in Maine. “If one were to select a single word or term to describe [the] essence [of conduct warranting punitive damages], it would be ‘malice.’ ”
 
 Miller Pipeline Corp.,
 
 460 N.E.2d at 180 (quoting
 
 Hibschman Pontiac, Inc. v. Batchelor,
 
 340 N.E.2d 377, 385 (Ind.Ct.App.1976) (Garrard, J., concurring)). Indeed, the
 
 malicious
 
 commission of a tort is a common thread running through many of the decisions in which this Court has upheld an award of punitive damages.
 
 [22]
 
 We therefore hold that punitive damages are available based upon tortious conduct only if the defendant acted with malice.
 

 This requirement of malice will be most obviously satisfied by a showing of “express” or “actual” malice. Such malice exists where the defendant’s tortious conduct is motivated by ill will toward the plaintiff.
 
 See H & R Block, Inc. v. Testerman,
 
 275 Md. 36, 43, 338 A.2d 48, 52 (1975);
 
 Detling v. Chockley,
 
 70 Ohio St.2d 134, 136, 436 N.E.2d 208, 210 (1982) (quoting
 
 Columbus Finance v. Howard,
 
 42 Ohio St.2d 178, 184, 327 N.E.2d 654, 658 (1975)); W. Prosser,
 
 supra,
 
 at 9-10 & n. 65; Ellis,
 
 supra
 
 note 4, at 21 & n. 109. Punitive damages will also be available, however, where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied. We emphasize that, for the purpose of assessing punitive damages, such “implied” or “legal” malice will
 
 not
 
 be established by the defendant’s mere reckless disregard of the circumstances.
 
 See Miller Pipeline Corp.,
 
 460 N.E.2d at 185.
 
 [23]
 

 We recognize that in some other jurisdictions the malice necessary to support an
 
 *1346
 
 award of punitive damages can be implied from a mere reckless disregard of the circumstances.
 
 See, e.g., American Laundry Machinery Industries v. Horan,
 
 45 Md.App. 97, 115, 412 A.2d 407, 419 (1980);
 
 Glidden v. Skinner,
 
 142 Vt. 644, 646, 458 A.2d 1142, 1144 (1983) (quoting
 
 Shortle v. Central Vermont Public Service Corp.,
 
 137 Vt. 32, 33, 399 A.2d 517, 518 (1979));
 
 cf
 
 Restatement (Second) of Torts § 908 (1977) (“Punitive damages may be awarded for conduct that is outrageous, because of the defendant’s evil motive
 
 or his reckless indifference to the rights of others.”
 
 (emphasis added)). We adopt a narrower view in order to reduce the vagueness and uncertainty surrounding the concept of implied malice in this context.
 
 See
 
 Ellis,
 
 supra
 
 note 4, at 34-37. As we indicated earlier, by allowing punitive damages based only upon this more certain and more culpable class of conduct, the efficiency and the fairness of the doctrine as a deterrent is increased.
 
 See id.
 
 at 39-53.
 

 In the case at bar, the evidence shows that the plaintiff was seriously injured by the defendant’s reckless operation of an automobile. The plaintiff contends that such conduct on the part of the defendant is sufficient to support an award of punitive damages.
 
 See Smith v. Gray Concrete Pipe Company, Inc.,
 
 267 Md. 149, 160-68, 297 A.2d 721, 728-32 (1972).
 
 [24]
 
 Under the standard we announce today, it clearly is not. We certainly do not condone the defendant’s conduct; nor do we fail to appreciate the tragic injuries imposed upon the plaintiff as a result of that conduct. We have determined, however, that deterrence — recognized by this Court as
 
 “the
 
 proper justification” for punitive damages
 
 [25]
 
 — cannot justify imposing an exemplary award in addition to compensatory damages and possibly criminal sanctions based solely upon a defendant’s reckless disregard of the circumstances. Because the defendant’s conduct was not accompanied by malice, either express or implied, we vacate the award of punitive damages.
 

 IV.
 

 Our stated goal of avoiding an over-broad application of the doctrine of punitive damages leads us to consider another issue raised by the defendant, namely, the standard of proof that should govern a claim for an exemplary award. • Presently in Maine, a plaintiff must prove his case for punitive damages by a preponderance of the evidence.
 
 See McKinnon v. Tibbetts,
 
 440 A.2d 1028, 1031 (Me.1982). The defendant urges us to abandon that rule, and to impose instead the more stringent proof requirement of clear and convincing evidence upon a plaintiff seeking an exemplary award. We realize that, in light of our holding in section III,
 
 supra,
 
 it is not necessary for us to address this question to dispose of the case now before us. For the benefit of litigants, bench, and bar, however, we conclude that it is appropriate to confront this issue now in the context of our reexamination of the doctrine of punitive damages, rather than postpone it to some future date.
 

 
 *1347
 
 This Court recently noted that “although the preponderance [of the evidence] standard normally prevails in a civil case, appellate courts in a large number of categories of litigation have found compelling reasons for requiring a higher form of proof.”
 
 Taylor v. Commissioner of Mental Health,
 
 481 A.2d 139, 150 (Me.1984). In
 
 Taylor,
 
 we listed a wide variety of cases where the United States Supreme Court, the Law Court, or a court of some other jurisdiction has imposed the requirement of clear and convincing evidence upon the party bearing the burden of proof.
 
 Id.
 
 at 149-50. Under this standard of proof, we observed, “the party with the burden of persuasion may prevail only if he can ‘place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are “highly probable”.’ ”
 
 Id.
 
 at 153 (quoting
 
 Colorado v. New Mexico,
 
 — U.S. -, -, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247 (1984)).
 

 We conclude that such a higher standard of proof is appropriate for a claim for punitive damages.
 
 See Roginsky v. Richardson-Merrell, Inc.,
 
 378 F.2d 832, 850-51 (2d Cir.1967);
 
 Travelers Indemnity Co. v. Armstrong,
 
 442 N.E.2d 349, 360-63 (Ind.1982);
 
 Wangen v. Ford Motor Co.,
 
 97 Wis.2d 260, 298-300, 294 N.W.2d 437, 457-58 (1980). It should be obvious from our discussion in section II,
 
 supra,
 
 that, although punitive damages serve an important function in our legal system, they can be onerous when loosely assessed. The potential consequences of a punitive damages claim warrant a requirement that the plaintiff present proof greater than a mere preponderance of the evidence. Therefore, we hold that a plaintiff may recover exemplary damages based upon tortious conduct only if he can prove by clear and convincing evidence that the defendant acted with malice.
 

 V.
 

 Because our opinion today substantially alters Maine law governing the availability of punitive damages, we address the scope of its temporal applicability. We discuss the effect of this decision upon the parties now before us as well as upon claims for punitive damages in general.
 

 As indicated in section III,
 
 supra,
 
 we give the defendant, “who has undertaken to change the law [governing punitive damages], the fruit of [his] victory.”
 
 Myrick v. James,
 
 444 A.2d 987, 1001 (Me.1982). We adhere to our practice of applying such changes in the common law to the parties presently before us.
 
 Id.
 

 Further, “we discern no reason, here, to depart from the general rule that the change[s] in the law we now announce [are] applicable to any case that has not been terminated in final manner.”
 
 MacDonald v. MacDonald,
 
 412 A.2d 71, 75 (Me.1980). This is not a case where public reliance on our previous decisions dictates that we limit the retroactive effect of our decision.
 
 See Myrick,
 
 444 A.2d at 1001-02;
 
 Black v. Solmitz,
 
 409 A.2d 634, 640 (Me.1979). Although our decision may deprive some plaintiffs of exemplary awards they would have received under prior law, the primary concern of the doctrine of punitive damages is to deter misconduct, not to benefit plaintiffs. Also, we have given notice of our intent to reexamine the availability of common law punitive damages in Maine on several occasions.
 
 E.g., Hanover Insurance Co. v. Hayward,
 
 464 A.2d 156, 158 n. 2 (Me.1983);
 
 Oliver v. Martin,
 
 460 A.2d 594, 595 n. 2 (Me.1983);
 
 Braley v. Berkshire Mutual Insurance Co.,
 
 440 A.2d 359, 361 n. 4 (Me.1982). We determine that our decision today should be given full retroactive effect.
 

 VI.
 

 In summary, we retain the doctrine of punitive damages at common law in Maine, but not without substantial modification. Tortious conduct will justify an exemplary award only when the plaintiff can prove by clear and convincing evidence that the de
 
 *1348
 
 fendant acted with either express or implied malice. This rule applies retroactively. Although it is apparent that the defendant in this case acted recklessly, reckless conduct alone cannot satisfy the element of malice necessary to justify an exemplary award. Accordingly, the judgment as to punitive damages must be vacated.
 

 Judgment amended by vacating award of punitive damages; as so amended, judgment affirmed.
 

 All concurring.
 

 [1]
 

 . The defendant has properly preserved the issue for appellate review.
 
 Cf. Hanover Insurance Co.,
 
 464 A.2d at 158 n. 2;
 
 Oliver,
 
 460 A.2d at 595 n. 2;
 
 Braley,
 
 440 A.2d at 361 n. 4.
 

 [2]
 

 . We reach this conclusion without relying upon our newly announced rule heightening the standard of proof applicable to claims for punitive damages.
 
 See infra
 
 section IV. Even under the preponderance of the evidence standard heretofore applied to punitive damages claims,
 
 see McKinnon v. Tibbetts,
 
 440 A.2d 1028, 1031 (Me.1982), the plaintiff did not demonstrate conduct sufficiently culpable to justify an award of punitive damages.
 
 See infra
 
 section III.
 

 [3]
 

 .
 
 See, e.g., Pike v. Dilling,
 
 48 Me. 539, 544-45 (1861) (Rice, J., dissenting);
 
 Murphy v. Hobbs,
 
 7 Colo. 541, 549, 5 P. 119, 124-26 (1884);
 
 Boyer v. Barr,
 
 8 Neb. 68, 71-75 (1878);
 
 Fay v. Parker,
 
 53 N.H. 342, 397 (1873);
 
 Bass v. Chicago & Northwestern Railway,
 
 42 Wis. 654, 672-73 (1877) (opinion of Ryan, C.J.).
 

 [4]
 

 .
 
 See, e.g.,
 
 Ellis,
 
 Fairness and Efficiency in the Law of Punitive Damages,
 
 56 S.Cal.L.Rev. 1 (1983); Ghiardi,
 
 Should Punitive Damages Be Abolished?
 
 — A
 
 Statement for the Affirmative,
 
 1965 A.B.A.Proc.Sec.Ins., Negl. and Comp.Law 282; Mallor and Roberts,
 
 Punitive Damages: Toward a Principled Approach,
 
 31 Hastings LJ. 639 (1980); Morris,
 
 Punitive Damages in Tort Cases,
 
 44 Harv.L.Rev. 1173 (1931); Note,
 
 The Vitality of the Doctrine of Punitive Damages in Maine,
 
 35 Me.L.Rev. 447 (1983).
 

 [5]
 

 .See, e.g., Auburn Harpswell Association v. Day,
 
 438 A.2d 234, 237 (Me.1981) (per curiam);
 
 Farrell v. Kramer,
 
 159 Me. 387, 391, 193 A.2d 560, 562 (1963);
 
 Pettengill v. Turo,
 
 159 Me. 350, 362-63, 193 A.2d 367, 374-75 (1963);
 
 Hall v. Edwards,
 
 138 Me. 231, 233-34, 23 A.2d 889, 890 (1942);
 
 Kaklegian v. Zakarian,
 
 123 Me. 469, 469-70, 123 A. 900, 900 (1924);
 
 Jones v. Grindel,
 
 121 Me. 348, 350, 117 A. 308, 309 (1922);
 
 Webb v. Gilman,
 
 80 Me. 177, 187-88, 13 A. 688, 688 (1888);
 
 Johnson v. Smith,
 
 64 Me. 553, 554 (1875);
 
 Goddard v. Grand Trunk Railway,
 
 57 Me. 202, 218 (1869).
 

 [6]
 

 . We note that, despite our decision in
 
 Hanover Insurance Co. v. Hayward,
 
 464 A.2d 156 (Me.1983), the trial court in this case excluded evidence of the fact that the defendant was convicted and punished criminally for the same conduct that gave rise to this civil litigation. A defendant is entitled to have the jury consider such evidence when it decides whether to assess punitive damages and, if so, in what amount.
 
 See id.
 
 at 159. Because of our disposition of this case, however, we need not decide whether the trial court’s exclusion of this evidence constitutes reversible error.
 
 See infra
 
 section III.
 

 [7]
 

 .
 
 But see
 
 Note,
 
 Hanover Insurance Co. v. Hayward: Imposition of Punitive Damages in Addition to Criminal Sanctions,
 
 36 Me.L.Rev. 467, 480-83 (1984) (outlining "several problems with the
 
 Hayward
 
 approach").
 

 [8]
 

 . As stated by one commentator, who was obviously uncomfortable with the notion of punitive damages:
 

 Again, when assessed exemplary damages, the accused [sic] is really punished for a criminal offense without the safeguards of a criminal trial. He is summoned into court to make compensation for a purely private injury, with no issue upon a criminal charge presented; punishment by fine is inflicted without indictment or sworn information; the rules of evidence as to criminal trials are rejected; the doctrine of reasonable doubt is replaced by the rule of preponderance of evidence; the defendant is compelled to testify against himself; and, though in criminal offenses the law fixes a maximum penalty which is imposed by the court, the jury is entirely free to assess exemplary damages, subject only to the power of the court, unwillingly exercised, to set aside the verdict. The procedure and principles of criminal law are disregarded....
 

 Willis,
 
 Measure of Damages When Property Is Wrongfully Taken by a Private Individual,
 
 22 Harv.L.Rev. 419, 421 (1909);
 
 see also
 
 Note,
 
 supra
 
 note 7, at 481-82.
 

 [9]
 

 .
 
 See e.g.,
 
 10 M.R.S.A. § 1322 (1980) (providing for treble damages, attorney's fees, and costs for willful violation of Fair Credit Reporting Act); 14 M.R.S.A. § 6034 (1980) (providing for double damages, attorney's fees, and costs for willful retention of security deposit in violation of law); 15 U.S.C. § 15 (1976) (providing for treble damages, attorney’s fees, and costs for violation of antitrust laws); 15 U.S.C. § 72 (1976) (providing for treble damages, attorney's fees, and costs for unfair competition in importing trade).
 

 [10]
 

 .
 
 See supra
 
 note 6.
 

 [11]
 

 . The defendant suggests that this Court embrace the rule followed in Indiana, where the courts have held that the possibility of criminal prosecution bars an action for punitive damages based upon the same conduct.
 
 See Taber v. Hutson,
 
 5 Ind. 322, 325 (1854);
 
 Glissman v. Rutt,
 
 175 Ind.App. 493, 496-97, 372 N.E.2d 1188, 1190 (1978). The Indiana courts themselves, however, have commented that "the rule preventing recovery of punitive damages due to the possibility of criminal prosecution is no doubt ripe for reexamination.”
 
 Smith v. Mills,
 
 179 Ind.App. 459, 463, 385 N.E.2d 1205, 1208 (1979);
 
 Glissman,
 
 175 Ind.App. at 497, 372 N.E.2d at 1191.
 

 [12]
 

 .See also Curtis Publishing Co. v. Butts,
 
 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In
 
 Curtis Publishing Co.,
 
 the Supreme Court, without explicitly addressing the double jeopardy issue, stated: "[T]he Constitution presents no general bar to the assessment of punitive damages in a civil case_”
 
 Id.
 
 at 159, 87 S.Ct. at 1994.
 

 [13]
 

 . Even in Indiana, where the possibility of criminal prosecution bars an action for punitive damages based upon the same conduct,
 
 see supra
 
 note 11, the courts acknowledge that such a rule is not constitutionally compelled.
 
 See Glissman v. Rutt,
 
 175 Ind.App. 493, 497, 372 N.E.2d 1188, 1190-91 (1978).
 

 [14]
 

 .
 
 See
 
 17-A M.R.S.A. § 3(2) (1983). Section 3(2) of the Maine Criminal Code provides:
 

 This code does not bar, suspend, or otherwise affect any right or liability for damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, regardless of whether the conduct involved in such civil action constitutes an offense defined in this code.
 

 But see
 
 Note,
 
 supra
 
 note 7, at 476-83 (acknowledging this provision of the criminal code, but concluding that punishment under the code and punitive damages should not both be imposed for the same conduct).
 

 [15]
 

 .
 
 See supra
 
 pp. 6-7.
 

 [16]
 

 . The defendant contends that this incentive is in fact a drawback because plaintiffs will attempt to maximize their recoveries without any regard as to what amount of punitive damages would serve as a just and sufficient deterrent.
 
 See
 
 Morris,
 
 supra
 
 note 4, at 1178. This, however, is not so much a problem inherent in the doctrine of punitive damages as it is a byproduct of our chosen adversary system of justice. We use this system because potential excesses, such as the one raised by the defendant, are hopefully cured by an equally zealous and competent advocate on the opposing side, an impartial jury as a fact finder, and a wise and wary judge overseeing the entire proceeding.
 

 [17]
 

 .
 
 See supra
 
 pp. 6-7, 11-12.
 

 [18]
 

 . In
 
 Wangen v. Ford Motor Co.,
 
 97 Wis.2d 260, 294 N.W.2d 437 (1980), the defendant argued that, in order to avoid giving the plaintiff a windfall, the court should award any punitive damages to the public.
 
 Id.
 
 at 291, 294 N.W.2d at 454. After noting that this argument had “a certain equitable ring” to it, the Wisconsin Supreme Court ultimately rejected it.
 
 Id.
 
 The court stated:
 

 The "windfall criterion" overlooks that the payment of punitive damages to the injured party is justifiable as a practical matter, because such damages do serve to compensate the injured party for uncompensated expenses,
 
 e.g.,
 
 attorneys’ fees and litigation expenses, and that the windfall motivates reluctant plaintiffs to go forward with their claims. If punitive damages were paid to the public treasury, fewer wrongdoers would be punished because the injured would have no inducement to spend the extra time and expense to prove a claim for punitive damages once an action had been brought.
 

 Id.
 
 at 292, 294 N.W.2d at 454. A Maine author has suggested that punitive damages could be split between plaintiffs and the state pursuant to legislative action. Note,
 
 supra
 
 note 4, at 458.
 

 [19]
 

 .
 
 See infra
 
 sections III and IV (to satisfy prima facie burden plaintiff must show by
 
 clear and convincing evidence
 
 that defendant acted
 
 with
 
 malice).
 

 [20]
 

 . We note that, although our opinion today provides a careful evaluation of a longstanding doctrine, many issues concerning the availability of punitive damages, which are not raised by this case, remain for future consideration and resolution. These issues include,
 
 inter alia,
 
 whether one can insure against the assessment of punitive damages, whether one can be vicariously liable for punitive damages, and the application of punitive damages in products liability and multiple plaintiff litigation. It should be clear that our decision not to abandon the doctrine of punitive damages does not eliminate the need for future definition and modification of it.
 

 [21]
 

 . Some theorize that punitive damages initially compensated plaintiffs for intangible harms, which were not cognizable under the existing common law.
 
 See
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 643-44; Ghiardi,
 
 supra
 
 note 4, at 286-87. Of course, modern tort law now allows compensatory damages for such intangible injuries, eliminating that particular basis for punitive damages. It has also been suggested that punitive damages first arose in cases involving "affronts to the honor of the victims,” as a means of satisfying insulted plaintiffs and preventing them from resorting to violent forms of self-help, such as dueling. Ellis,
 
 supra
 
 note 4, at 14-15, 17-18. It is not so clear that this function of the doctrine of punitive damages has become obsolete.
 
 Compare
 
 Mallor and Roberts,
 
 supra
 
 note 4, at 650,
 
 and
 
 Morris,
 
 supra
 
 note 4, at 1198-99,
 
 with
 
 Ellis,
 
 supra
 
 note 4, at 29. In any event, it is not the primary justification given for exemplary awards today.
 

 [22]
 

 .
 
 See, e.g., Auburn Harpswell Association v. Day,
 
 438 A.2d 234, 237 (Me.1981) (per curiam);
 
 Farrell v. Kramer,
 
 159 Me. 387, 391, 193 A.2d 560, 562 (1963);
 
 Hall v. Edwards,
 
 138 Me. 231, 233-34, 23 A.2d 889, 890 (1942);
 
 Saliem v. Glovsky,
 
 132 Me. 402, 410, 172 A. 4, 8 (1934);
 
 Bourisk v. Derry Lumber Co.,
 
 130 Me. 376, 378, 156 A. 382, 382-83 (1931);
 
 Kaklegian v. Zakarian,
 
 123 Me. 469, 469-70, 123 A. 900, 900 (1924);
 
 Jones v. Grindel,
 
 121 Me. 348, 350, 117 A. 308, 309 (1922);
 
 Webb v. Gilman,
 
 80 Me. 177, 187-88, 13 A. 688, 688 (1888);
 
 Johnson v. Smith,
 
 64 Me. 553, 554 (1875);
 
 Goddard v. Grand Trunk Railway,
 
 57 Me. 202, 218 (1869).
 

 [23]
 

 . We observe that an apparent conflict exists between
 
 Miller Pipeline Corp.
 
 and another decision by a different panel of the Indiana Court of Appeals concerning the quality of tortious conduct that can justify an exemplary award.
 
 Compare Miller Pipeline Corp.,
 
 460 N.E.2d at 179-80, 185,
 
 with Orkin Exterminating Company, Inc. v. Traina,
 
 461 N.E.2d 693, 702-03 (Ind.Ct.App.1984);
 
 see Miller Pipeline Corp. v. Broeker,
 
 464
 
 *1346
 
 N.E.2d 12, 12 (Ind.Ct.App.1984) (rejecting the
 
 Orkiti
 
 standard, which "contemplates something considerably less than the malice standard ... enunciated in
 
 Miller Pipeline,"
 
 and denying a petition for rehearing). As is indicated in our opinion, we find the malice standard enunciated in
 
 Miller Pipeline Corp.
 
 persuasive.
 
 See Miller Pipeline Corp.,
 
 460 N.E.2d at 179-80, 185.
 

 [24]
 

 .
 
 But see id.
 
 at 172-75, 297 A.2d at 734-35 (Smith, J., dissenting) (finding reckless operation of motor vehicle insufficient to demonstrate actual or implied malice);
 
 First National Bank of St. Mary’s v. Fidelity and Deposit Co.,
 
 283 Md. 228, 232 n. 3, 389 A.2d 359, 362 n. 3 (1978) ("Only under the peculiar facts and circumstances existing in
 
 Smith v. Gray Concrete Pipe Company, Inc., ...
 
 has this Court permitted recovery of exemplary damages in connection with an automobile accident.").
 

 [25]
 

 .
 
 Braley v. Berkshire Mutual Insurance Co.,
 
 440 A.2d 359, 362 (Me.1982) (quoting
 
 Foss v. Maine Turnpike Authority,
 
 309 A.2d 339, 345 (Me.1973) (emphasis in original)).