STATE OF MAINE                          HOULTON SUPERIOR COURT
AROOSTOOK, SS                           DOCKET NO. HOUSC-CV-15-023

ESTATE OF HEIDI LYN PRATT )
                          )
          Plaintiff       )
                          )
     v.                   )              FINDINGS OF FACT AND
                          )              CONCLUSIONS OF LAW
MATTHEW DAVIS,            )              M.R.CIV.P. 52
                          )
          Defendant       )


On July 11, 2017, the court conducted a hearing on damages in connection with the above referenced. The court makes the following findings of fact and conclusions of law.

## Findings of Fact

1. On December 22, 2016, Matthew Davis (10/29/1980) was found guilty "beyond a reasonable doubt" by a jury of 10 criminal counts in docket number HOUSC-CR-13-137. These charges included the crimes of Murder of Heidi Lyn Pratt and the crime of Arson of Heidi Lyn Pratt's residence located at 331 Oakfield-Smyrna Road, Oakfield, ME.

2. In finding Matthew Davis guilty, the jury found that he had "intentionally or knowingly" caused the death of Heidi Lyn Pratt.[1]

3. On February 10, 2017, Matthew Davis was sentenced to life in prison in HOUSC-CR-13-137.

4. The crime for which Matthew Davis was convicted by jury occurred on or about September 23, 2013, in Oakfield, ME.

5. On September 23, 2013, Heidi Lyn Pratt was at her home located at 331 Oakfield-Smyrna Road in Oakfield, ME.

---

[1] 17 M.R.S.A. §201.

6. In the early morning hours, Matthew Davis entered Heidi Pratt's residence with a firearm.

7. While in the residence at 331 Oakfield-Smyrna Road, Matthew Davis shot and killed Heidi Pratt and Michael Kitchen. At some point he also set the house on fire.

8. Heidi Pratt's body was found in the entry hallway of her home. At defendant's trial for murder in HOUSC-CR-13-137, evidence was presented that prior to being shot, Heidi Pratt had left her bedroom where she was sleeping and went to the entry hallway to investigate the noise created by Matthew Davis's arrival at the home.

9. The coroner's report, authored by Dr. Mark Flomenbaum, the Chief Medical Examiner for the State of Maine, determined that Heidi Pratt's cause of death to be "Exsanguination due to a gunshot wound."

10. Dr. Flomenbaum further testified to the details of Heidi Pratt's death at Matthew Davis's criminal trial on Wednesday, December 7, 2013. Dr. Flomenbaum testified that Heidi Pratt suffered exsanguination when a high-caliber bullet pierced her carotid artery.

11. Exsanguination is defined by Merriam Webster as "the action or process of draining or losing blood."[2]

12. Dr. Flomenbaum testified that a large pool of blood was found underneath Heidi Pratt's body. The large pool of blood indicates that Heidi Pratt was alive, and her heart continued to pump blood throughout her body -- including to and ultimately out the injured portion of her carotid artery.

13. It is unclear to the court whether the period of time from the infliction of the gunshot wound to the time when Heidi Pratt ultimately succumbed to her injuries represents a period of "conscious suffering."

14. On September 16, 2015, the Estate of Heidi Lyn Pratt filed a two-count complaint with the Houlton Superior Court.

---

[2] https://www.merriam-webster.com/dictionary/exsanguination

15. This complaint alleged in Count 1 the complaint of "Wrongful Death M.R.S.A. 18-A §2-804(b). Count 2 of the complaint alleged "Death Following Conscious Suffering" M.R.S.A. 18-A §2-804(c).

16. In each of count 1 and count 2, the Plaintiff sought damages in the amount of $500,000 for the loss of Comfort, Society, and Companionship, $250,000 for punitive damages, and its costs for professional services, costs for funeral expenses, and whatever other relief the court deemed just and necessary.

17. Service of the complaint and summons was made on the defendant on September 28, 2015. This summons set forth the standard admonition in bold letters that the Defendant would need to file a written answer within 20 days of service or risk having a default judgment entered against him.

18. On October 20, 2015, the Plaintiff moved for the entry of a default judgment as the defendant had failed to enter a response to the complaint and summons within the required timeframe.

19. On October 22, 2015, the Defendant filed a note with the court requesting that he be allowed to file a late answer to the complaint and indicating that he denied everything in the complaint.

20. On December 16, 2015, the Plaintiff filed a motion opposing defendant's motion to file late answer.

21. On January 11, 2016, the court denied the Defendant's motion to file a late answer.

22. On January 21, 2016, the court entered the Defendant's default in HOUSC-CV-15-023.

23. On January 26, 2016, Defendant filed a motion requesting the court to set aside the default judgment. This filing was supplemented by a letter from a non-attorney and non-party to the matter, "Billie Jo Davis," asking the default to be set aside.

24. On January 27, 2016, Plaintiff filed a motion for hearing on damages (Plaintiff's counsel had not yet received Defendant's motion to set aside default).

25. On February 4, 2016, Plaintiff filed a motion opposing Defendant's motion to

set aside default.

26. By agreement of both the Plaintiff and the Defendant, the matter of whether or not to set aside the default judgment was postponed until after the conclusion of defendant's criminal trial for the murder of Heidi Lyn Pratt and Michael Kitchen.

27. A hearing on Defendant's motion to set aside default was scheduled for May 2017.

28. Prior to this hearing, Defendant sent a letter dated April 3, 2017 that he was withdrawing his motion to set aside default judgment. In this letter the Defendant stated "I would also like to ask the court to proceed however Mr. Suitter intends to [sic]..."

29. On May 4, 2017, the Aroostook County Superior County clerk sent out a letter to the Defendant asking if he intended to participate via video conference in any hearing on damages. The Defendant did not respond to this letter.

30. On July 11, 2017, a hearing on damages was held at the Aroostook County Superior court; the Plaintiff and Plaintiff's counsel appeared via video conference. At this hearing the court indicated it would take judicial notice of the entire trial file of HOUSC-CR-13-137 as well as written submissions by Paul Suitter regarding the loss of society, comfort, and companionship.

31. The affidavits of Paul Edwin Suitter detail his relationship with Heidi Lyn Pratt. These affidavits are hereby incorporated by reference and their statements establish a foundation for regarding Paul Edwin Suitter's loss of comfort and consortium due to the actions of Matthew Davis.

32. At the hearing on damages, the Plaintiff repeated its request to the court for a finding for damages in the amount of $500,000 on both counts 1 and 2 for the loss of Comfort, Society, and Companionship, and $250,000 on both counts 1 and 2 for punitive damages.

33. The Plaintiff also demanded its costs for funeral costs. These funeral costs, along with the costs of a grave memorial, are detailed in the affidavit of Paul Edwin Suitter and totaled $10,011.43.

34. The Plaintiff also demanded its costs for professional services. These included the cost of probating the Estate of Heidi Lyn Pratt and are detailed in the affidavit of Paul Edwin Suitter and totaled $15,032.09.

## CONCLUSIONS OF LAW

35. The award of civil damages "effectively augments the criminal law in deterring intolerable conduct. The doctrine of punitive damages encourages the use of civil actions by private parties in response to such conduct especially when the prospective compensatory recovery is low or the expected cost of litigation is high." Tuttle v. Raymond, 494 A.2d 1353, 1358-59 (Me. 1985).

36. A Plaintiff in Maine "may recover exemplary damages upon tortious conduct only if he can prove by clear and convincing evidence that the Defendant acted with malice." Id. at 1363.

37. There is no formula or specific computation to determine what an appropriate dollar figure is when awarding civil damages. Rather, Maine courts have held that "Punitive damages...can be individualized to provide a deterrent that will be adequate for each case." Id. at 1359 (quoting Mallor and Roberts, Punitive Damages: Toward a Principled Approach, 31 Hastings L.J. 639 (1980).

38. When considering the value of an award of exemplary damages "the fact finder must weigh 'all relevant aggravating and mitigating factors' presented by the parties, including the egregiousness of the defendant's conduct, the ability of the defendant to pay such an award, and any criminal punishment imposed . . . . After such consideration, an exemplary award is 'within the sound discretion of the fact finder.'" Id. (quoting Hanover Ins. Co. v. Hayward, 464 A.2d 156, 158 (Me. 1983).

39. A final factor in a court's determination of an exemplary award is that civil penalties provide a mechanism for "enforcement of society's rules against serious misconduct." Id. at 1358.

40. **M.R.CIV.P. 52(a).** In all actions tried upon the facts without a jury or with an

advisory jury, the Superior Court justice or, if an electronic recording was made in the District Court, the District Court judge, shall upon the request of a party made as a motion within 7 days after the statement of the decision in open court, or the entry of the decision or judgment on the docket, whichever comes first, or may upon its own motion, find the facts specifically and state separately its conclusions of law. Such findings and conclusions may be made in summary form and may be made orally, provided that, in every action for termination of parental rights, the court shall make specific findings of fact and state its conclusions of law thereon as required by 22 M.R.S.A. §4055. If an opinion or memorandum of decisions is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Any motion made pursuant to Rule 52(a) must include the proposed findings of fact and conclusions of law requested. The court is not required to make findings of fact and conclusions of law on decisions of motions under Rule 12 or 56, or in small claims actions.

41. **(b) Amended or Additional Findings.** The court may, upon motion of a party filed not later than 14 days after entry of judgment, amend it findings or make additional findings and may amend the judgment if appropriate. The motion may be made with a motion for a new trial or a motion to alter or amend the judgment pursuant to Rule 59. Any motion made pursuant to Rule 52(b) must include the proposed findings of fact and conclusions of law requested.

42. **(c) Effect.** Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a referee, to the extent that the court adopts them, shall be considered as the findings of the court.

43. Matthew Davis was responsible for the murder of Heidi Lyn Pratt.

44. While it is possible that prior to suffering death, Heidi Pratt experienced a period of conscious suffering, in the court's view there is simply insufficient evidence of this. It is possible that there was conscious suffering but it is also possible that although she was alive for a brief time before exsanguinating, she was rendered unconscious by her wound. The court declines to speculate

regarding this aspect of Ms. Pratt's tragic circumstances.

45. Matthew Davis was responsible for the arson of Heidi Lyn Pratt's residence at 331 Oakfield Smyrna Road.

46. Paul Suitter is the only son and heir of Heidi Pratt.

47. It is one of the purposes of civil penalties to punish abhorrent conduct.

48. It is a purpose of civil penalties to act as a deterrent to conduct that is against society's values.

49. In considering the appropriate level of exemplary damages it is a mitigating factor that Mathew Davis has been sentenced to life in prison.

50. It is an aggravating factor that Mathew Davis acted with malice and that his actions resulted in the death of Heidi Pratt, and that he also committed the crime of Arson and set the residence on fire.

51. Further, the court finds that Matthew Davis's actions deserve the utmost and strongest possible condemnation from the court in order to serve as a deterrent to this type of behavior.

52. In consideration of the above aggravating and mitigating factors, the court finds that on count 1 the award for loss of comfort and society is $500,000 and the punitive damages are $250,000.

53. Because the court declines to speculate regarding whether Ms. Pratt experienced conscious suffering, it also declines to make any award under Count 2 of the Plaintiff's complaint.

54. The Plaintiff is awarded its costs for funeral expenses and a grave memorial. These expenses are hereby awarded in the amount of $10,011.43.

55. The Plaintiff has sought an award for professional services associated with the probate of Ms. Pratt's estate in the amount of $15,032.09. The court does not take issue with the reasonableness of these fees but must decline to make an award for them because it concludes that they do not fall within the meaning of "pecuniary injuries" provided for in 18-A MRS §2-804(b).

56. In consideration of the preceding findings of fact and conclusions of law, the total award for the Plaintiff is $760,011.43

**The entry shall be**: Judgment is rendered in favor of the Plaintiff against the Defendant in the amount of $760,011.43 plus prejudgment interest at the rate of __3.27__ and postjudgment interest at the rate of __6.87__ plus costs.

The Clerk is directed to incorporate this judgment into the docket by reference pursuant to the provisions of M.R.Civ.P. 79(a).

Date: September 6, 2017

E. Allen Hunter
Active Retired Justice, Superior Court

| Attorney | Party | Representation Type | Representation Date |
|----------|-------|--------------------|--------------------|
| Edwards, Andrew | Heidi Lyn Pratt Estate -... | Retained | 09/18/2015 |
| Edwards, Andrew | Paul Suitter - 3 Person... | Retained | 09/18/2015 |