Joseph J. RICCI, et al., Plaintiffs,

v.

**KEY BANCSHARES OF MAINE, INC., et al. Defendants.**

Civ. No. 82–0249 P.

United States District Court,
D. Maine.

April 27, 1987.

On Post-Judgment Motions
June 17, 1987.

Richard E. Poulos, John S. Campbell, Portland, Me., Robert M. Axelrod, Meriden, Conn., M. Hatcher Norris, Glastonbury, Conn., John C. Peters, Hartford, Conn., for plaintiffs and Gerald Davidson.

James H. McGowan, III, Hiscock & Barclay, Syracuse, N.Y., for all defendants

Dennis Sbrega, Hiscock & Barclay, Portland, Me., for Depositors & Key Bancshares.

Jules L. Mogul, Louis H. Kornreich, Bangor, Me., for Depositors Trust.

Richard M. Zielinski, Gael Mahoney, John A.D. Gilmore, Hill & Barlow, Boston, Mass., for Haselton, Holdsworth & Key Bank of Cent. Me.

Thomas D. Burns, Thomas Peisch, Burns & Levinson, Boston, Mass., for Key Bancshares & Key Bank.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge, Sitting by Designation.

This matter comes before the Court upon certain remaining prejudgment issues, specifically plaintiffs' claims in Counts 1 and 2 for statutory punitive damages, pursuant to Section 706(b) of the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(b) (1982), and the motion of defendant Key Bancshares of Maine, Inc. for directed verdict on plaintiff Joseph Ricci's claim in Count 10 for exemplary damages under Maine common law.

## Background

■ This case proceeded to trial on nine separate counts, arising from the decision of the defendant banks to terminate their lending relationship with the plaintiffs. The plaintiffs were Joseph J. Ricci, Gerald E. Davidson and their various wholly-owned corporations (*see post*, note 6). The defendants were Key Bank of Southern Maine, Inc. f/k/a Depositors Trust Company of Southern Maine, Inc. ("Depositors-Southern"); Key Bank of Central Maine, Inc. f/k/a Depositors Trust Company of Augusta, Inc.; and Key Bancshares of Maine, Inc. ("Key Bancshares") f/k/a Depositors Corporation, the holding company of the other two defendant banks. Five counts alleged violations of federal statutory provisions, and four counts alleged pendent claims under the common law of the State of Maine. Different plaintiffs and defendants were named in the various counts. At the close of their case, the plaintiffs voluntarily dismissed one of the federal counts, brought pursuant to 42 U.S.C. § 1981 (1982) (Count 12), and the defendants jointly moved for a directed verdict on all remaining counts. The Court initially reserved decision and later granted the defendants' motion on two of the federal counts, brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (1982) (Counts 3 and 4).[1] The remaining six counts were thereafter submitted to the jury.[2]

The plaintiffs' two remaining federal counts, Counts 1 and 2, alleged violations of distinct provisions of the Equal Credit Opportunity Act, 15 U.S.C. § 1691–1691f (1982). Count 1 alleged that the defendants discriminated against the plaintiffs on the basis of Joseph Ricci's national origin, in violation of § 1691(a). Count 2 alleged that defendant Depositors-Southern took adverse action against the plaintiffs but failed to provide a timely, written "statement of reasons", in violation of § 1691(d). In each of these counts, plaintiffs sought an award of statutory "punitive" damages, in addition to actual damages. Under § 1691e(b), an award of punitive damages for a violation of the Act is limited to $10,000. Courts generally have held that such punitive damages may not be awarded unless a plaintiff demonstrates by a preponderance of the evidence that the defendant's violation was "wanton, malicious or oppressive," or that the defendant at least acted with "reckless disregard of the requirements of the law." *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir.1983); *Anderson v. United Finance Co.*, 666 F.2d 1274, 1278 (9th Cir.1982); *Sayers v. General Motors Acceptance Corp.*, 522 F.Supp. 835, 841–42 (W.D.Mo.1981); *Shuman v. Standard Oil*

---

**1.** The Court's chief reason for granting a directed verdict on Counts 3 and 4 is that no evidence was produced at trial to show that any "report" the defendants may have assembled on plaintiffs Joseph Ricci and Gerald Davidson was "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing [the plaintiffs'] eligibility for … credit … to be used primarily for personal, family, or household purposes", as required under 15 U.S.C. § 1681a(d) for application of the Fair Credit Reporting Act to plaintiffs' claims. The Act does not apply to reports used for business, commercial or professional purposes. *See, e.g., Boothe v. TRW Credit Data,* 523 F.Supp. 631, 633 (S.D.N.Y.1981); *Lay v. Boron Oil Co.,* 419 F.Supp. 1240, 1242–43, (W.D. Pa.1976); *Sizemore v. Bambi Leasing Corp.,* 360 F.Supp. 252, 254–55 (N.D.Ga.1973). The evidence produced at trial uniformly demonstrated that the plaintiffs' borrowing relationship with the defendants, as established in the Line of Credit Agreement with Depositors-Southern, was maintained primarily for the plaintiffs'

commercial and business purposes. Although it was shown that Depositors-Southern occasionally granted loans to Ricci and Davidson for personal, consumer purposes, such loans were unquestionably made incident to the bank's overall business credit relationship with the plaintiffs. Thus, even assuming that the defendant banks constituted "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(f), there was no showing that the defendants collected information on Ricci or Davidson for any consumer credit purposes independent and apart from the overall purpose of their lending relationship, which was primarily commercial and business credit. In addition, the evidence failed to establish, as a matter of law, that the defendants compiled an "investigative consumer report" as defined in 15 U.S.C. § 1681a(e), which is an element of plaintiffs' claim in Count 4.

**2.** Pursuant to an agreement of the parties, the jury consisted of 10 persons, and a verdict required the concurrence of at least 8 jurors.

*Co.*, 453 F.Supp. 1150, 1154–55 (N.D.Cal. 1978). Accordingly, in submitting Counts 1 and 2 to the jury, the Court instructed the jury to determine whether any defendant whose conduct it found to violate the requirements of the Equal Credit Opportunity Act, acted maliciously, wantonly, oppressively, or with reckless disregard of the law in committing the violation. The parties agreed that the amount of any award of punitive damages should be reserved for determination by the Court.

In two of their pendent state law claims, those for defamation (Count 9) and intentional infliction of emotional distress (Count 10) [3], plaintiffs sought an award of punitive, or exemplary, damages.[4] Although the Court permitted the jury to consider those claims, a bifurcated procedure was employed in which the jury was initially asked, on a special verdict form, to determine whether plaintiffs were entitled to an award of exemplary damages, but not to determine the amount of such damages; only if the jury answered affirmatively would plaintiffs then be permitted to introduce evidence of the defendants' net worth for the jury to consider in deciding the amount of exemplary damages to be imposed. This procedure was followed because the Court had some doubts as to whether the plaintiffs' showing with respect to the defendants' conduct was sufficient to sustain an award of exemplary damages, and the Court felt that disclosure of the defendants' net worth might prejudicially influence the jury's other determinations.

The special verdict form returned by the jury included the following findings [5]: Under Count 1, the jury found that defendant Key Bancshares of Maine, Inc. acted "maliciously, wantonly, oppressively, or with reckless disregard for the law" in discriminating against plaintiffs Joseph Ricci, Gerald Davidson and Golden Ark Enterprises [6]. (Answers to Count 1, questions 3, 6 and 9). Under Count 2, the jury found that the failure of defendant Key Bank of Southern Maine to provide a required statement of reasons to plaintiffs Ricci, Davidson and Golden Ark Enterprises was likewise committed "maliciously, wantonly, oppressively, or with reckless disregard for the law." (Answer to Count 2, question 4). Under Count 10, the jury indicated that it found by "clear and convincing evidence" that defendant Key Bancshares acted with "malice" in intentionally inflicting severe emotional distress upon plaintiff Joseph Ricci. (Answer to Part IV, question 10).

On the following day, the net worth of defendant Key Bancshares, was disclosed to the jury [7], after which counsel presented closing arguments specifically addressed to the award of exemplary damages under Count 10. The Court then instructed the jury on factors to be considered in determining an appropriate award of exemplary damages and submitted the question to the jury. The jury returned a verdict of $12,500,000 in exemplary damages for the plaintiff,[8] after which defendant Key Bancshares renewed it motion for a directed verdict on the issue of exemplary damages.[9] The Court then announced on the

---

**3.** Plaintiffs other two pendent state law claims were for breach of contract (Count 5) and for breach of implied covenant of good faith and fair dealing (Count 7).

**4.** Maine law generally refers to such damages as "exemplary damages," and this opinion adopts that terminology.

**5.** The jury's answers on this verdict were unanimous.

**6.** Plaintiffs Ricci and Davidson are fifty percent owners of plaintiffs Golden Ark Enterprises, Inc. and Elan One Corporation. Golden Ark Enterprises, Inc., in turn, is a holding company which owns all of the stock in the remaining plaintiff corporations. The parties stipulated that in determining any damages in favor of any

of the plaintiff corporations, the jury should treat those damages as going to Golden Ark Enterprises. Accordingly, only Golden Ark Enterprises was named in questions on the special verdict form.

**7.** The parties stipulated that the defendant's net worth was $77,400,000.

**8.** A poll revealed that 8 of the 10 jurors concurred in this verdict.

**9.** The defendants also renewed their motion for a directed verdict as to all other remaining counts, which the Court denied.

Although the renewal of a directed verdict motion after the jury has returned its verdict is

record that the motion of Key Bancshares would be granted and that a reasoned opinion to that effect would follow.

**Exemplary Damages under Count 10**

■ The Court first turns to the question of whether an award of exemplary damages under Count 10 was proper under Maine law. In the recent case of *Tuttle v. Raymond,* 494 A.2d 1353 (Me.1985), the Supreme Judicial Court of Maine adopted a stringent test to govern claims for exemplary damages.[10] Under this test, a plaintiff may recover exemplary damages based upon tortious conduct "only if he can prove by clear and convincing evidence that the defendant acted with malice." *Id.* at 1363.

"Clear and convincing evidence" requires the party with the burden of proof to "place in the ultimate factfinder an abiding conviction that the truth of his factual contentions are highly probable." *Id.* (quoting *Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 153 (Me.1984). The "clear and convincing evidence" standard is thus stricter than the "preponderance of the evidence" standard usually applied in a civil case, which requires proof only that a particular contention is more probable than not.

A plaintiff may establish the malice requirement by a showing of actual or implied malice. "Actual" malice exists when "the defendant's conduct is motivated by ill will toward the plaintiff." *Tuttle,* 494 A.2d at 1361. "Implied" malice arises when deliberate conduct by the defendant is so outrageous that malice can be assumed. *Id.*

In considering defendant's motion for a directed verdict, the Court is guided by the general policy of Maine law that disfavors directed verdicts. *See, e.g., Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1386 (Me.1983). Nevertheless, the Supreme Judicial Court of of Maine has made clear that factual findings for which the law requires support by "clear and convincing evidence" are subject to a greater degree of judicial scrutiny than findings which need only be established by a preponderance of the evidence. *Taylor v. Commissioner of Mental Health,* 481 A.2d at 153 (*modifying Horner v. Flynn,* 334 A.2d 194 (Me.1975)).[11] This Court's review of the jury's finding of liability for punitive damages under Count 10 is governed by essentially the same standard that would apply to a review of that finding on appeal. *See Butler v. Poulin,* 500 A.2d 257, 260 & n. 5 (Me.1985). That standard is "whether the [jury] could reasonably have been persuaded that the required factual finding was or was not proved to be highly probable." *Taylor v. Commissioner of Mental Health, supra.* In applying that standard, the Court must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the plaintiff. *E.g., Seiders v. Testa,* 464 A.2d 933, 935 (Me.1983).

■ After careful consideration, the Court concludes the plaintiff failed to produce sufficient evidence from which a jury could reasonably find it highly probable that the defendant acted with malice. Viewed in the light most favorable to the plaintiff, the evidence showed that defendant Depositors Corporation responded recklessly, callously and discriminatorily upon hearing allegations from state and federal law enforcement officials connecting plaintiff Ricci to organized crime. That re-

typically called a "motion for judgment notwithstanding the verdict," the defendants' renewed motions herein were made prior to entry of judgment and thus are not motions of the sort contemplated under Federal Rule of Civil Procedure 50(b). In any case, the same standard applies regardless of what the motion is called. *See* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2537, at 599 (1971). This order, however, is not intended to limit the scope of any Rule 50(b) motions the defendants may wish to file after entry of judgment.

10. The *Tuttle* court held that its decision would be given full retroactive effect. *Id.* at 1363. Hence, even though this case was filed in 1982, the *Tuttle* standard is applicable.

11. The *Taylor* court emphasized that the "clear and convincing evidence" test it adopted is an "intermediate" burden of proof which accords with the test generally followed by federal courts and most state courts. 481 A.2d at 152–154. *See, e.g., Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1984).

sponse included the immediate and permanent cancellation of further credit to plaintiff; the concealment from plaintiff of the specific actual reasons for the cancellation; the refusal to even discuss the allegations with the plaintiff or with the officers of Depositors-Southern most familar with plaintiff's businesses; and the subsequent failure to take adequate remedial steps to cure the devastating injuries its actions caused to plaintiff's business operations and personal reputation. The evidence supported a finding that, by those actions, the defendant recklessly inflicted severe emotional distress upon the plaintiff, or was certain or substantially certain that such distress would result from its conduct. However, there was no showing—and certainly no showing to a "high probability"—that the defendant acted with the sort of malice towards the plaintiff which the law requires to support a claim for exemplary damages, i.e., deliberate conduct motivated by ill-will or specifically intended to injure the plaintiff. Viewed in the light most favorable to the plaintiff, the evidence reasonably shows only that the defendant was motivated by self-centered, business interests (such as its ambitions to merge with other banks) and placed those interests above any concern for the impact its actions had or might have upon the plaintiff. Such motives do not, in the Court's view, rise to the level of "malice" required under *Tuttle* to support a claim for exemplary damages.

Accordingly, the Court will grant the defendant's motion for directed verdict on the issue of exemplary damages and will set aside the jury's award of 12.5 million dollars.

■ The Court emphasizes, however, that it finds sufficient evidence was presented to support the jury's finding of liability for compensatory damages against defendant Key Bancshares under Count 10. The plaintiff's burden with respect to that finding, in contrast with the finding of liability for punitive damages, is merely proof by a "preponderance of the evidence." Most importantly, the jury's verdict that the defendant *intentionally* inflicted se-

vere emotional distress did not necessarily entail a determination that the defendant acted with malice. Under Maine law, the jury could find the requisite intent upon a showing that the defendant acted "intentionally or recklessly," or that the defendant was "certain or substantially certain" that severe emotional distress would result. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979). "Intentional" infliction, as so defined, is not necessarily equivalent to malice (either actual or implied), because intent can be found based upon a showing of reckless or callous indifference. However, as *Tuttle* makes clear, conduct which is reckless or grossly negligent is not sufficient to justify an award of exemplary damages. 494 A.2d at 1361.

### Punitive Damages Under Counts 1 and 2

The Court next turns to plaintiffs' claims for statutory punitive damages under Counts 1 and 2. As previously discussed, under the Equal Credit Opportunity Act a plaintiff may seek, in addition to actual damages, an award of punitive damages limited to $10,000. The statute provides that, among other factors, the Court must consider the "extent to which the creditor's failure of compliance was intentional" when determining the amount of such damages. 15 U.S.C. § 1691e(b). Numerous courts have reasoned that, by including this language, Congress intended to limit awards of punitive damages to cases where the defendant's violation was "wanton, malicious, or oppressive" or was at least committed with "reckless disregard of the requirements of law." *See Fischl v. General Motors Acceptance Corp., supra; Anderson v. United Finance Corp., supra; Sayers v. General Motors Acceptance Corp., supra; Schuman v. Standard Oil Corp., supra.* Accordingly, the Court asked the jury, under Counts 1 and 2, to determine whether the plaintiffs demonstrated by a preponderance of the evidence that any defendant whose conduct it found to violate the requirements of the Equal Credit Opportunity Act, acted maliciously, wantonly, oppressively or with reckless disregard for the law in committing the viola-

tion. Under Count 1, the jury answered affirmatively as to defendant Key Bancshares, in favor of plaintiffs Ricci, Davidson and Golden Ark Enterprises. Under Count 2, the jury answered affirmatively as to defendant Key Bank of Southern Maine, in favor of plaintiffs Ricci, Davidson and Golden Ark Enterprises. The evidence presented at trial reasonably supports those findings. They are therefore binding upon this Court in determining the amount of punitive damages to be imposed under Counts 1 and 2.

 Having considered all of the factors listed in 15 U.S.C. § 1691e(b) and other relevant factors, the Court concludes that defendant Key Bancshares should be held liable under Count 1 for an amount of punitive damages totalling $10,000, to be divided equally between plaintiffs Joseph Ricci and Gerald E. Davidson; and that defendant Key Bank of Southern Maine should be held liable under Count 2 for an amount of punitive damages totalling $10,000, also to be divided equally between plaintiffs Ricci and Davidson.[12] Particularly in view of the serious consequences of the violations that the respective defendants were found to have committed under Counts 1 and 2, which is reflected in the jury's substantial overall awards of actual damages, the Court finds it appropriate to impose a full $10,000 award of punitive damages under each count. Liability of either defendant for a total amount greater than that, however, is not warranted. Even though the jury found the respective defendants liable to all three plaintiffs—Ricci, Davidson and Golden Ark Enterprises—the evidence only supports a finding of one violation by each defendant which affected all three plaintiffs. Finally, the Court finds that the considerations supporting an award of punitive damages under Count 2 warrant that the award should be divided equally between plaintiffs Ricci and Davidson even though the jury only found actual damages in favor of the latter. It is clear from the structure and purpose of the Act that proof of actual damages is not a prerequisite to entitlement to punitive damages. *Anderson v. United Finance Corp., supra; Cherry v. Amoco Oil Corp,* 490 F.Supp. 1026, 1029 (N.D.Ga.1980); *Smith v. Lakeside Foods Inc,* 449 F.Supp. 171, 172 (N.D.Ill.1978).

### Order

In accordance with the foregoing, it is hereby ORDERED AND ADJUDGED:

1. That the motion of defendant Key Bancshares of Maine, Inc. for directed verdict on the issue of exemplary damages under Count 10 is granted.

2. That the jury's verdict of exemplary damages under Count 10 is hereby set aside.

3. That an award of punitive damages in the amount of $5,000 in favor of plaintiff Joseph Ricci and $5,000 in favor of plaintiff Gerald Davidson is hereby imposed against defendant Key Bancshares of Maine, Inc. under Count 1.

4. That an award of punitive damages in the amount of $5,000 in favor of plaintiff Joseph Ricci and $5,000 in favor of plaintiff Gerald Davidson is hereby imposed against defendant Key Bank of Southern Maine, Inc. under Count 2.

5. The clerk is directed to enter judgment in accordance with the jury's verdict as modified by the foregoing order.

### OPINION AND ORDER ON POST–JUDGMENT MOTIONS

This opinion disposes of a number of post-judgment motions following a jury verdict on April 13, 1987 which assessed damages against defendants in the sum of $15 million on five counts of the complaint. The action arose from the termination by the defendant banks of the credit line previously extended to plaintiffs. The verdict assessed damages for various acts of defendants found to be violations of federal laws governing credit transactions as well

---

**12.** The Court has not specified that the respective award should be split *three* ways because a two-way split between Ricci and Davidson is easier and achieves the same result, since Ricci and Davidson are each half-owners of Golden Ark Enterprises.

as for breach of contract and tort under Maine law.

The verdict on Count I was an award of $3 million (consisting of $1 million to each of the two individual plaintiffs and $1 million to Golden Ark, the corporate plaintiff designated to represent all the corporate plaintiffs for the purpose of assessing damages) against defendant Key Bancshares of Maine, Inc. (Key Bancshares) for discrimination based on plaintiff Ricci's national origin, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* The verdict on Count II was $1 million for plaintiff Davidson against defendant Key Bank of Southern Maine, Inc. (Key Southern) for failure to provide a statement of reasons for denial of credit, in violation of the Equal Credit Opportunity Act. The verdict on Counts V and VII was $5 million for plaintiff Golden Ark against Key Southern for breach of contract and breach of the implied covenant of good faith and fair dealing. The verdict on Count X was $6 million for plaintiff Ricci against defendant Key Bancshares for the intentional infliction of emotional distress.

On Count X the jury also returned a verdict of $12.5 million in punitive damages for plaintiff Ricci against defendant Key Bancshares. On April 27, 1987 the Court directed a verdict in favor of defendant Key Bancshares on the subject of punitive damages under Count X. At the same time the Court awarded $20,000 in punitive damages to plaintiffs Ricci and Davidson under the federal claims of Counts I and II.

Now pending before the Court are plaintiffs' motion for reconsideration of the Court's rejection of the $12.5 million punitive damage award and defendants' motion for judgments notwithstanding the verdicts or, in the alternative, for a new trial or remittitur.

Also pending are plaintiffs' motion for assessment of pre-judgment interest and defendants' motion for relief from pre-judgment and post-judgment interest. Plaintiff Ricci also moves for relief from

the continued posting of a $50,000 bond to secure the sanctions which were earlier imposed against him by Judge Aldrich. *See Ricci v. KeyBancshares of Maine, Inc.,* 111 F.R.D. 369, 380–81 (D.Me.1986).

Finally, there are pending the plaintiffs' motion for attachment against defendants' real and personal property in the amount of $20,010,822.00, (comprising the verdict total of $15 million and an asserted amount of "at least" $4,980,822.00 in pre-judgment interest), plaintiffs' motion for post-judgment interest assertedly accruing at a rate of 15% on $15,020,000.00 from the date final judgment is entered, and defendants' motion for a stay of execution pending appeal.[1]

■ The motion for judgment notwithstanding the verdict is denied for the same reasons that prior motions for a directed verdict were denied. With respect to both motions, the Court must view the evidence most favorably to the non-moving party, and give that party the benefit of all reasonable inferences from the evidence. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524 (1971). In the present case, the Court is satisfied that there was sufficient evidence introduced on the relevant claims from which the jury could properly find a verdict for the plaintiffs. *See* discussion *infra,* (evidence sufficient to withstand motion for new trial.)

■ The motion for a new trial is also denied. Defendants correctly suggest that, when considering this motion, the Court is free to weigh the evidence itself and is *not* required to view the evidence most favorably to the plaintiffs. *Id.* § 2806. Nevertheless, after examining the evidence in its entirety, the Court is not left with a "definite and firm conviction that a mistake has been committed." *Id.* Rather, it is the Court's opinion that there was sufficient evidence, in each instance, for the jury to reach its verdict.

Specifically, as to the verdict on Count I there was a reasonable basis in law and

---

1. Defendants also moved for a stay of execution pending determination of the motion for judgment notwithstanding the verdict or for a new trial. Plaintiffs did not object to that motion. With this opinion, that motion for stay of execution is rendered moot.

sufficient evidence for the jury to conclude first, that Key Bancshares was involved in the extension of credit to plaintiffs to the point of being a "creditor" within the meaning of 15 U.S.C. § 1691e, and second, that plaintiff Ricci's national origin was a, factor causing Key Bancshares to treat Ricci and his associates less favorably than it treated or would have treated customers who were not of that national origin. Evidence from which the jury could reasonably have found or inferred discrimination included plaintiff Ricci's testimony that Leo Amato, a bank officer who, like Ricci, is an American of Italian descent, suggested that the bank was discriminating against Ricci because of his national origin and evidence that Amato, the bank officer most familiar with Ricci's account, was not allowed to participate nor was he consulted on the decisions made with respect to the events that led to this lawsuit.

■ On Count II there was an abundance of evidence from which the jury could conclude that defendant Key Southern failed to give to plaintiff Davidson the legally required written statement of the reasons for its refusal to extend credit, first by total uncommunicativeness and then by incomplete and deceptive communications.

■ On Counts V and VII, there was sufficient evidence to allow the jury to find that by abruptly terminating their sustained, active and flexible credit relationship with plaintiffs, defendants breached the line of credit agreement and its implied covenant of good faith and fair dealing. The Court instructed the jury, that an implied covenant of good faith and fair dealing applied to this contract under Maine law. The Court notes that the opinion of the First Circuit Court of Appeals in *Reid v. Key Bank of Southern Maine, Inc*, 821 F.2d 9 (1st Cir.1987) issued subsequent to the Court's instruction of the jury in this case holds that a covenant of good faith and fair dealing is implied in every contract under Maine law.

■ On Count X there was sufficient evidence to support the jury's finding that defendant Key Bancshares intentionally inflicted emotional distress upon plaintiff Ricci. This includes evidence that the conduct accompanying the termination of credit was reckless, callous, discriminatory, was prolonged by concealment and obduracy, and was exacerbated by a failure to take reasonable remedial measures. On the other hand, with respect to the exemplary or punitive damages awarded by the jury on Count X, the Court adheres to its decision of April 27, 1987, that evidence was lacking from which the jury could find it highly probable that the defendant acted with the requisite malice. The directed verdict in defendant's favor on that point will not be disturbed.

The Court is not persuaded that the jury's weighing of the evidence produced a seriously erroneous result or a manifest miscarriage of justice. In the Court's opinion, the jury's verdict reflects reasonable conclusions based on the evidence presented.

■ Defendants also argue that the verdicts were excessive and that remittitur is therefore appropriate. *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2815 (1973). The Court is not persuaded, however, that the amounts were either the result of inflamed passion or prejudice or a shocking miscalculation of actual damages. Considering the nature of the business interests affected here and the personal consequences testified to at trial, the Court cannot say that the jury's calculations were entirely out of proportion to the injuries found. Particularly in the absence of any contradictory expert testimony on behalf of defendants, the evidence regarding the business opportunities lost by plaintiffs in connection with Counts V and VII and the emotional distress suffered by plaintiff Ricci in connection with Count X provide a reasonable basis for the jury's verdict.

Beyond the evidentiary support adduced at trial, the Court would offer an additional explanation as to why the jury's verdict on Count X cannot be said to "shock the conscience." When a jury places a value on

injuries in an area in which measures of damage have not been widely developed, such as torts committed by a bank against its customer, it is expressing the wisdom of the community with respect to the subject. If it is based on the evidence it ought to remain unaffected by a judge's abstract calculations, or by loose analogies to verdicts for other types of injury in other circumstances. In short, the Court does not find this verdict either shocking, or unjustified, or without basis in the evidence presented. Accordingly, the Court will not disturb the verdict either as to the merits or as to the amount.

The Court adheres to its award in connection with Counts I and II, of the maximum amount of $10,000 punitive damages for each count under 15 U.S.C. § 1691e(b). In the Court's view, the violations of the Equal Credit Opportunity Act were accompanied by a degree of callousness and recklessness that amounted to intentional conduct. Furthermore, the amount of punitive damages is small in relation to the actual damages awarded by the jury. Having considered the factors listed in 15 U.S.C. § 1691e(b) and other relevant factors, the Court is satisfied that the assessment of punitive damages in the maximum statutory amount is justified.

■■■ On the question of pre-judgment interest, the Court concludes that plaintiffs' failure to introduce evidence from which the jury could determine the rate of interest which should have applied to the federal claims, precludes an award of pre-judgment interest on those federal claims. *See Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 81–84 (1st Cir. 1984). The Court's examination of the record, particularly a conference at sidebar with counsel during the testimony of plaintiff's economic expert, Dr. McAusland, does not reveal that any alternative to a jury determination was agreed upon. Accordingly, pre-judgment interest is awarded only as to the $11 million arising from the

verdicts on the state law claims of Counts V, VII and X. This shall be calculated at the rate of 8% in accordance with 14 M.R.S.A. § 1602 (Supp.1986). Interest shall accrue from the time the complaint was filed until the date on which judgment was entered, except that prejudgment interest will not be calculated during the six month suspension ordered by Judge Aldrich. *See Ricci v. Key Bancshares*, 111 F.R.D. at 380.[2]

■■■ On the question of securing the judgment for plaintiffs, the Court has concluded that attachment is required under the circumstances of this case. Federal Rule of Civil Procedure 64 directs the Court to apply state law to determine the availability of a remedy providing for seizure of person or property to secure a judgment. On plaintiffs' motion for approval of attachment, therefore, Maine Rule of Civil Procedure 4A governs.

The Advisory Committee Notes to the Maine Rules of Civil Procedure presume that attachment is available after judgment or pending appeal. C. Harvey, R. McGuire, & L.K. Wroth, *Maine Civil Practice* 70 (2d Ed.Supp.1981) (Advisory Committee's Note of April 15, 1975). The availability of post-judgment attachment is also suggested by the history of the remedy. Attachment was originally obtainable in Maine without judicial intervention and later was made available under Rule 4A upon a relatively low threshold showing of likelihood of success. *Maine National Bank v. Anderschat*, 462 A.2d 482, 484 (Me.1983). The Advisory Committee Note, together with the history of the remedy, clearly suggest that attachment is obtainable after judgment has been entered. The question then becomes whether and to what extent a court has discretion to order attachment.

When a motion for attachment is made during the course of an action and after notice to the other party, Maine law *requires* attachment upon a showing of a reasonable likelihood that the moving party

---

**2.** On May 12, 1986, Judge Selya issued an order providing, *inter alia,* "that the accrual of any and all prejudgment interest is terminated as of this date." Judge Aldrich later modified that

Order by suspending pre-judgment interest for six months. *Ricci v. Key Bancshares,* 111 F.R.D. at 380.

will recover judgment. *Dartmouth Company v. Day's, Inc.,* 419 A.2d 366, 367 n. 1 (Me.1980); *See Anderschat,* 462 A.2d at 484. In that situation, a court has no discretion to deny attachment on the grounds that attachment would be "inequitable." *Anderschat,* 462 A.2d at 484.

It would be illogical to find that attachment—which is *mandated* prior to judgment upon a showing of a likelihood of success—is available but not mandated after success has been achieved in the concrete form of a jury verdict. Plaintiffs' case has not only survived motions to dismiss and motions for a directed verdict, but also, through this opinion, a motion to set aside or alter the verdict. The Court concludes, therefore, that plaintiffs have clearly demonstrated a likelihood of success and that attachment is required under Maine law.

As to the amount of the attachment the Court finds that in order to be consistent with Rule 4A, the amount must at least equal the amount of the judgment considered by the Court to be sound. In this case that amount consists of the sum of $15 million, plus 8% prejudgment interest on $11 million for the period indicated *ante,* plus 6.30% interest on $15 million from date of entry of judgment.[3]

The Court notes that pursuant to 14 M.R.S.A. § 4613 (1964), defendants could apparently vacate the attachment by posting a bond. The Court is also satisfied that the attachment, or any bond eventually posted to vacate the attachment, entitles defendants to a stay of execution pending appeal. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2905 (1973).

The Court has not been persuaded that plaintiffs should be relieved of their obligation to post the $50,000 bond required in connection with the sanctions imposed by Judge Aldrich. The intention expressed by both parties to appeal various aspects of this case is reason enough to continue the bond for judicially-imposed sanctions independently of the jury verdict.

## ORDER

In accordance with the foregoing, it is hereby ORDERED that:

1. Defendants' motion for judgment notwithstanding the verdict, for a new trial, and for remittitur is hereby *denied;*

2. Plaintiffs' motion to reconsider the setting aside of the jury verdict for punitive damages on Count X is hereby *denied;*

3. Defendants' motion to set aside the Court's award of punitive damages under Counts I and II is hereby *denied;*

4. Pre-judgment interest shall be awarded to plaintiffs at the rate of 8% on the $11 million verdict on Counts V, VII, and X, said interest to be calculated from the date on which the Complaint was filed until the date on which judgment was entered, except that pre-judgment interest shall be suspended for a six month period beginning May 12, 1986;

5. Post-judgment interest shall be awarded to plaintiffs at the rate of 6.30% on the entire $15 million verdict, to be calculated from the date judgment was entered;

6. Plaintiffs' motion for attachment is *granted* in an amount consistent with this Memorandum Opinion;

7. Plaintiffs' motion for relief from the posting of the $50,000 bond is *denied;*

8. Defendants' motion for stay of execution pending appeal is hereby *granted.*

---

3. The rate of post-judgment interest is based on the average accepted auction price for United States Treasury bills, to be calculated by the Director of the Administrative Office of the United States Court. *See* 28 U.S.C. § 1961 (1982). The applicable rate in this case is 6.30%.