**RENAISSANCE YACHT COMPANY, INC., Plaintiff,**

v.

**Jan H. STENBECK d/b/a Stonebrook Marine, Defendant.**

**Civ. No. 92–127–P–C.**

United States District Court, D. Maine.

Feb. 24, 1993.

James Goggin, Roy S. McCandless, Verrill & Dana, Portland, ME, for plaintiff.

Peter J. DeTroy III, Russell Pierce, Theodore Kirchner, Norman, Hanson & Detroy, Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER ON MOTIONS FOR JUDGMENT AS A MATTER OF LAW (Fed. R.Civ.P. 50) ON CLAIMS FOR BREACH OF CONTRACT BASED UPON BREACH OF AN IMPLIED COVENANT OF GOOD FAITH PERFORMANCE OF CONTRACTUAL OBLIGATIONS

GENE CARTER, Chief Judge.

Defendant herein has asserted in Count III of his Counterclaim a claim for breach of contract, *inter alia*, the alleged breach of an implied covenant of the Construction Agreement herein requiring good-faith performance of contractual obligations of Plaintiff under the Agreement. Plaintiff has also asserted in oral argument to the Court before and after commencement of trial breach of such an implied duty as a basis for its claim of a breach by Defendant of the Agreement (Count I of the Complaint). Now before the Court is the issue of whether such claims are viable under Maine law[1] and whether, if not, they should be disposed of by entry, as appropriate, of judgment thereon as a matter of law under Federal Rule of Civil Procedure 50.

Whether such an implied covenant exists under Maine law has been the subject of much confusion in the jurisprudence of this Court and that of the Court of Appeals for the First Circuit. Recent developments make this an appropriate time for this Court to attempt to clarify the present status of Maine law on the question of whether a party to a contract is, in all cases, subject to an implied covenant that the party will exercise good faith in performing contractual obligations.

The issue first surfaced discretely in this district during this Court's handling of the pretrial motion practice in *Reid v. Key Bank of Southern Maine,* Civ. No. 85–0088–P (Memorandum and Order on Defendant's Motion to Dismiss (D.Me., Jan. 7, 1986) (unpublished)). That motion addressed, *inter alia,* Count VIII of the Complaint. That count alleged a claim based on breach of the defendant's implied duty of good faith and fair dealing in performing the obligations of its loan agreement and note and mortgage with its banking customer. The motion sought dismissal of the count on the basis that no such implied covenant existed under Maine law. In addressing the issue, this Court stated:

> The majority of the states, as well as the Restatement (Second) of Contracts (§ 205) and the Uniform Commercial Code (§ 1–203) recognized as a general principle of contract law that the parties to a contract must perform their duties thereunder in good faith. Burton, *Breach o[f] Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369 (1980). However, there appear to be no Maine cases either adopting or rejecting this principle. However, there is little, if any, reason to believe that the Maine Law Court would not follow, in an appropriate case, the majority rule. That rule involves no exotic proposition and has the persuasive benefit of adoption by the Restatement *and the Uniform Commercial Code.*

*Id.* at 5 (unnumbered) (emphasis added). The issue continued to be hotly disputed throughout the trial in the *Reid* case, and Count VIII was ultimately submitted to the

---

1. The Court has previously held that the Maine Uniform Commercial Code does not apply to the Construction Agreement involved in this case.

jury on an ambiguous basis.[2] The *Reid* case went to the Court of Appeals for the First Circuit on appeal. That court reviewed this Court's handling of the issue involving Count VIII and affirmed. The court said:

> The district court took as self-evident the proposition that Maine contract law required good faith performance. *See generally* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369 (1980). The Uniform Commercial Code, as adopted by Maine, states: 'Every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement.' 4 Me.Rev.Stat.Ann. tit. 11, § 1–203 (1964). That this obligation carried with it a cause of action seems clear from another provision of the Code: 'Any right or obligation declared by this Title is enforceable by action unless the provision declaring it specifies a different and limited effect.' *Id.* at § 1–106(2). *See also* Restatement (Second) of Contracts § 205 (1979).
>
> We interpret the Maine cases making reference to the general duty of good faith in light of this general acceptance of the principle. The Maine Supreme Judicial Court has explicitly recognized the U.C.C.'s 'broad requirements of good faith, commercial reasonableness and fair dealing.' *Schiavi Mobile Homes, Inc. v. Gironda,* 463 A.2d 722, 724–25 (Me.1983) (citing U.C.C. §§ 1–203, 2–103 & 1–106, Comment 1). In addition, some aspects of the present case concern the handling of Reid's bank accounts with Depositors and *would thus be governed by the standard of 'good faith' and 'ordinary care' under sec-*

*tion 4–103 of the U.C.C. See C–K Enterprises v. Depositors Trust Co.,* 438 A.2d 262, 265 (Me.1981).

.    .    .    .    .

> We view the Maine court as implicitly recognizing that contractual relationships *of the present nature* are governed by a requirement of good faith performance. We do not think that this duty to perform in good faith is altered merely by calling the contractual relationship 'adversary.'

*Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d 9, 12–13 (emphasis added). In considering whether a cause of action arose from breach of such an implied covenant, the court said.

> First, a determination that no such cause of action exists would conflict with the clear meaning of section 1–203 of the U.C.C., particularly when read in conjunction with section 1–106(2). We assume that the Maine courts would adhere to the plain language of these provisions, *as well as to generally accepted modern contract principles.*

*Id.* at 13 (emphasis added).[3]

While *Reid* was on appeal, this Court confronted the issue again in *United States v. H & S Realty Co.,* 647 F.Supp. 1415, 1424–25 (D.Me.1986). There, the United States sued a guarantor for payment of the deficiency on a Small Business Administration deferred participation loan. The guarantor asserted a third-party claim against the lending bank, alleging, *inter alia,* breach *by the lending bank* of an implied covenant of good faith and fair dealing *as between the bank and its*

---

**2.** The Court has recently reviewed the trial transcript in *Reid,* which reflects that in both ruling on Defendant's motions for directed verdict at trial and in its instructions to the jury, the Court articulated to the jury a bipartite basis for the submission of the court based upon the existence of an implied duty of good faith: (1) the applicability of § 1–203 of the Maine U.C.C. to the obligations in question; and (2) that such a duty existed generally under the Maine common law of contracts.

**3.** After the appellate decision in *Reid,* the case of *Ricci v. Key Bancshares of Maine, Inc.,* 662 F.Supp. 1132 (D.Me.1987) (Watson, J.), came before the Court on post-judgment motions. Judge Watson (sitting by designation in this dis-

trict) had submitted the case to the jury on the basis of the learning he took from the appellate opinion in *Reid.* In ruling on the post-judgment motions, he stated:

> The Court instructed the jury, that an implied covenant of good faith and fair dealing applied to this contract under Maine law. The Court notes that the opinion of the First Circuit Court of Appeals in *Reid v. Key Bank of Southern Maine, Inc.,* Civ.Ct. 86–1820 slip op. [821 F.2d 9] (1st Cir. June 10, 1987) issued subsequent to the Court's instruction of the jury in this case holds that a covenant of good faith and fair dealing *is implied in every contract under Maine law.*

*Id.,* 662 F.Supp. at 1141 (emphasis added).

*borrower,* in connection with the administration of the loan and the maintenance of and realization on the collateral. *Id.* at 1424. There, the Court, being aware that the Maine U.C.C. applied to the contract obligations in question and drawing upon its acquaintance from *Reid* with the issue of the existence of such an implied covenant of good faith, observed, perhaps over-broadly considering the applicability of the Maine U.C.C. in *Reid,:*

> There is some uncertainty as to the exact source and content of the good faith standard applicable to Key Bank and to the SBA. Turning first to Key Bank, its relationship to H & S Realty is governed by Maine law. Although the Maine Law Court has not ruled on the question, this Court has previously *assumed* that Maine law imposes a general duty of good faith on the parties to a contract. *See Reid v. Key Bank of Southern Maine, Inc.,* Civ. No. 85–0088–P, slip op. at 5 (D.Me. Jan. 7, 1986) (Carter, J.) [ (unpublished) ].

*Id.* at 1424 (emphasis added). The Court then went on to consider which of two standards of good faith applied under Maine law.

Once again, before the appellate decision in *Reid* was announced, the Court, *in a case where the Maine U.C.C. was not applicable to the contract obligations in issue, Triple–A Baseball Club Associates v. Northeastern Baseball, Inc.,* 655 F.Supp. 513, 536 (D.Me. 1987), made this observation:

> Although the Maine Law Court has not confronted the question, this Court has previously assumed that Maine law imposes a general duty of good faith on the

parties to a contract. *United States v. H & S Realty Co.,* 647 F.Supp. 1415, 1424 (D.Me.1986); *Reid v. Key Bank of Southern Maine, Inc.,* Civ. No. 85–0088–P, slip op. at 5 (D.Me. Jan. 7, 1986) [ (unpublished) ]. Although the Uniform Commercial Code does not govern this contract, its definition of good faith as 'honesty in fact' is relevant here.

*Id.* at 536 (citations omitted), as a predicate for use of the U.C.C. definition of "good faith" to determine that there was in that case no breach of any duty of good faith.[4] Chronologically there followed, on June 10, 1989, the decision of the Court of Appeals in the *Reid* case. That was followed in October by the Court of Appeals' opinion on the appeal in *Triple–A Baseball Club v. Northeastern Baseball, Inc.,* 832 F.2d 214, 219 (1st Cir.1987), where the Court observed once again:

> The district court first ruled that Maine Law 'imposes a general duty of good faith on the parties to a contract.' 655 F.Supp. at 536. We think that was correct. *See Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d 9, 12–15 (1st Cir.1987).

*Id.*[5]

A number of conclusions are now readily apparent from the foregoing discussion of authorities:

(1) The courts of the State of Maine, and especially the Maine Law Court, have not decided that entry into a contract imposes upon the parties thereto a general, implied duty to carry out contractual duties with good faith and fair dealing.[6]

---

**4.** The Court there noted that its decision on the existence of a good-faith duty was before the Court of Appeals in *Reid* and observed that the resolution of the issue on that appeal would not affect the result in the case then before the Court. *Triple–A Baseball,* 655 F.Supp. at 536, n. 13.

**5.** Since *Triple–A Baseball,* the Court has indulged its prediction of a general implied duty of good faith performance in *Reid Paper Co. v. Proctor & Gamble Distributing Co.,* 807 F.Supp. 840, at 847–48 (D.Me.1992). In the Case of *Werman v. Malone,* 750 F.Supp. 21, 24 (D.Me.1990), the Court restricted the existence of the duty to circumstances involving contractual duties created by the U.C.C. and casualty insurance policies.

**6.** A case sometimes cited as authority for the proposition that the general duty of good faith in respect to performance of contract obligations exists under Maine law is the antique case of *Savage v. Whitaker,* 15 Me. 24 (1838). A careful reading of that case, however, does not support that conclusion.

The Court there states that "[a]n engagement to do a certain thing, involves an undertaking to secure and use effectually all of the means, necessary to accomplish the object; and among these, the most important and essential was, to obtain the written consent of the Postmaster General." *Id.* at 26. This Court is satisfied that that language is intended to relate to a description of an event that formed a part of the consid-

(2) Various provisions of the Maine U.C.C. impose such an implied duty in cases where the Code provisions apply to the contract obligations in question. *See* 11 M.R.S.A. §§ 1–203 and 4–103.

(3) The Restatement (Second) of Contracts (1979), § 205, recognizes the general applicability of such an implied duty.

(4) This Court in *Reid:*

(a) *held* that an implied duty of good faith existed there because of the applicability of the provisions of the Maine U.C.C. to the contract obligations at issue, and

(b) *predicted* that Maine law would recognize generally an implied duty in all contractual situations.

(5) This Court transmuted its "prediction" in *Reid* into an "assumption" of the existence under Maine law of such an implied duty in *H & S Realty* and *Triple–A Baseball.*

(6) The Court of Appeals in *Reid* affirmed the existence of a *general* duty of good faith, *id.* at 12, but predicated its conclusion in that respect on the Law Court's explicit recognition of the "U.C.C.'s 'broad requirements of good faith, commercial reasonableness and fair dealing.'" *Id.,* and

(7) The Court of Appeals in *Triple–A Baseball* upheld what it construed as this Court's ruling that "Maine [l]aw 'imposes a general duty of good faith on the parties to a contract.'" *Id.* at 219.

The state of Maine law, without more, is that the *federal courts* of this district and circuit have, in the absence of any authoritative guidance or holding from the Maine courts, determined that Maine law imposes an implied general duty of good faith on the parties to a contract in carrying out their respective contractual obligations. There was a clear basis for the conclusion that the implied duty existed where the contractual obligations at issue were governed by the provisions of the Maine U.C.C. that imposed such a duty. *Reid* and *Ricci* were properly

decided on that basis. There was also a sufficient basis for the Court to predict in *Reid,* and to assume in the *Ricci, H & S Realty, Triple–A Baseball, Werman,* and *Reid Paper Co.,* cases, that given the opportunity, the Maine Law Court would recognize the existence of such an implied duty as a matter of general applicability. Such was, and is, the majority rule, and that rule is supported, if not based upon, the adoption of such a duty by both the Uniform Commercial Code and the Restatement (Second) of Contracts § 205 (1979).

The ineluctable fact is that in view of very recent Maine case law, the prediction has proven to be incorrect. The Maine Law Court has recently observed:

Defendant also contends that the Bank breached an implied covenant of good faith in not disclosing information that the Shawmut Inn project was failing when the Bank made loans to him. We have recognized that the Uniform Commercial Code, § 1–203, imposes a duty of good faith and fair dealing by banks, requiring 'honesty in fact in the conduct or transaction concerned.' *Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d [609] at 613 [Me.1992] (citing 11 M.R.S.A. §§ 1–203 (1964), 1–201(19) (1964)). The U.C.C. imposes a duty of objective good faith in certain situations. *See* 11 M.R.S.A. §§ 1–203 (1964), 3–406 (1964), 3–419(3) (1964), and 9–318(2) (Supp.1991). *We, however, have not extended that duty beyond its statutory scope. Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d at 613–14.

*First NH Banks Granite State v. Scarborough,* 615 A.2d 248, at 250–51 (1992) (emphasis added; footnote omitted). In the *Diversified Foods* case cited by the court, there was in controversy the obligations *inter se* of banks and their borrowing customers. The court there gave clear expression to its reluctance to extend the U.C.C. provisions in respect to an implied duty of good faith beyond the scope of its application specifically expressed in the Code. The court said:

eration for the note, as the court points out in the opinion. The court is not there discussing any implied duty not set forth in the contract but is

referring to a portion of the express consideration for the contract formation.

The Borrowers contend that, even if the Banks did not violate the terms of the Loan Agreement as allegedly modified by their course of dealing, they breached an implied duty of good faith. The Superior Court correctly concluded that the Uniform Commercial Code, § 1–203, imposed such a duty of good faith upon the Banks, requiring 'honesty in fact in the conduct or transaction concerned.' 11 M.R.S.A. §§ 1–203, 1–201(19) (1964); see Reid v. Key Bank of Southern Maine, Inc., 821 F.2d 9, 14–15 (1st Cir.1987). The Borrowers contend that the Banks were also subject to an objective 'good faith' duty to act in a commercially reasonable manner.

The U.C.C. does impose the more onerous duty of objective good faith in certain situations. See §§ 2–103, 3–406, 3–419(3) and 9–318(2). The Borrowers contend that Article 4 extends such a duty to all bank activities. Article 4 does incorporate notions of 'ordinary care,' but is limited to issues of bank deposits and collections. The Borrowers allege no violations of the Banks' deposit and collection duties. We decline to extend the duty beyond its statutory scope.

Diversified Foods, Inc. v. First National Bank of Boston, 605 A.2d 609, at 613 (Me. 1992) (emphasis added).

These two recent precedents establish, in the view of this Court, that there is no general implied duty of good faith under Maine law that operates beyond the scope of the mandate of the Maine U.C.C. and the contractual relationship between an insurer and its insured on a policy of casualty insurance. Diversified Foods so holds, and First NH Banks reflects that the Maine Law Court intends, at least for the nonce, not to create such an implied duty and to recognize only that duty created by the legislature in the Maine U.C.C. and not to extend it beyond the scope it is given in the express terms of the Code.

The practice of federal courts predicting the content of state substantive law where it is shrouded in doubt is always a risky, if sometimes necessary, venture. It is now clear that this Court's "prediction" cum "assumption" that Maine law would recognize

such an implied duty was off the mark and should be promptly corrected. Accordingly, this Court will no longer recognize, in the absence of a clear holding to the contrary by the Maine Law Court, in its future application of Maine substantive law, existence of any implied duty to perform contractual obligations in good faith and with fair dealing outside of the context of the express terms of the Maine U.C.C. and contractual obligations on a contract of casualty insurance when put in issue between the insured and the insurer.

There being no legal foundation for the claims asserted for breach of contract in the Complaint and Counterclaim (Count III) herein based upon breach of an implied duty of good faith performance of contractual obligations, the Motions for Judgment as a matter of law thereon are hereby GRANTED as to all such claims herein, and it is hereby ORDERED that Count III of Defendant's Counterclaim be, and it is hereby, DISMISSED.