Lisette M. **LEHOUILLIER**, Plaintiff,

v.

**EAST COAST STEEL, INC.**, Defendant.

No. CIV. 97–344–P–C.

United States District Court,
D. Maine.

July 9, 1998.

Peter W. Culley, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for Plaintiff.

Martica S. Douglas, Douglas, Denham, Rogers & Hood, Portland, ME, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Lisette M. Lehouillier, Personal Representative of the Estate of Francis A. Lehouillier, brought this suit against Defendant East Coast Steel, Inc. for damages stemming from an automobile collision in which her husband, Francis A. Lehouillier, died. Now before the Court is Defendant's Motion for Partial Summary Judgment ("Defendant's Motion") (Docket No. 5), in which Defendant seeks summary judgment on Count III of Plaintiff's Complaint. Defendant argues that, as a matter of law, Plaintiff is not entitled to the punitive damages she seeks in Count III. For the reasons stated below, the Court will deny Defendant's Motion.

### I. STANDARD

In determining a motion for summary judgment, the Court views

> "the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990) (citations omitted). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Euromotion, Inc. v. BMW of North America, Inc.,* 136 F.3d 866, 869 (1st Cir.1998).

### II. BACKGROUND

On November 8, 1995, Mr. Lehouillier was killed in a motor vehicle accident which occurred at the intersection of Routes 9 and 9B in Wells, Maine. At the time of the accident, Defendant was transporting a 120–foot "I" beam on a tractor trailer driven by Defendant's driver, Guy Young. Plaintiff's State-

ment of Material Facts ("Plaintiff's Statement") (Docket No. 7) ¶ 6; Defendant's Statement of Material Facts ("Defendant's Statement") (Docket No. 5) ¶ 2. On November 6, 1995, Defendant applied for and was issued a permit by the State of Maine to move the "I" beam. Plaintiff's Statement ¶¶ 2–3; Defendant's Statement ¶ 3. Such a permit was required by law because of the length of the beam. Defendant's Statement ¶ 3. Defendant planned to move the "I" beam in two intervals. Plaintiff's Statement ¶ 6; *see also* 29–A M.R.S.A. § 2382. First, with a police escort and during daylight hours, Defendant instructed Young to transport the "I" beam from South Portland to the Wells Town Garage, which Young did successfully. Plaintiff's Statement ¶¶ 6, 8. Then, Young was directed to move the beam from the Wells Town Garage to the job site later that same day. Plaintiff's Statement ¶ 6. During the second leg of the delivery, Defendant violated the terms of the permit by transporting the beam at night and without a police escort. Plaintiff's Statement ¶¶ 4, 13; Defendant's Statement ¶ 3.

Mr. Lehouillier's vehicle struck the tractor trailer while it was attempting to turn left from Route 9 onto Route 9B. Plaintiff's Statement ¶ 14. At the time Mr. Lehouillier's vehicle collided with it, the "I" beam was completely blocking the roadway of Route 9. Plaintiff's Statement ¶ 19; Defendant's Statement ¶ 2. The beam had no lights or reflective markings attached to it. Plaintiff's Statement ¶ 16; Defendant's Statement ¶ 4. The accident occurred at approximately 11:30 p.m., and the beam was nearly invisible in the darkness. Plaintiff's Statement ¶¶ 13, 17; Defendant's Statement ¶ 4. Plaintiff acknowledges that certain additional facts are in dispute, including whether Defendant and its driver knew that the transportation of the "I" beam was subject to certain restrictions, whether Young told the police escort for the first leg of the delivery that another police escort would be arranged for the second leg of the delivery, and whether Young had a private escort during the second leg of the delivery. *See* Plaintiff's Statement at 1 n. 1.

## III. DISCUSSION

■ Count III of Plaintiff's Complaint seeks punitive damages against Defendant and alleges that Defendant's conduct, in "knowingly causing the operation of the tractor-trailer in violation of the terms of a permit issued pursuant to [29–A M.R.S.A. § 2382,] evidenced actual or implied malice." Complaint (Docket No. 1) ¶ 15. In *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985), the Maine Law Court held that "punitive damages are available based upon tortious conduct only if the defendant acted with malice." According to the court,

> This requirement of malice will be most obviously satisfied by a showing of 'express' or 'actual' malice. Such malice exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff.... Punitive damages will also be available, however, where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied.

*Id.* The *Tuttle* court expressly rejected a standard that would permit an award of punitive damages on the basis of grossly negligent or reckless conduct. *Id.* Such a broad standard would, according to the court, "dull[ ] the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." [1] *Id.* Plaintiff must prove by clear and convincing evidence that Defendant acted with malice. *Id.* at 1363.

■ In responding to Defendant's Motion, Plaintiff acknowledges that "[t]he issue central to the punitive damages inquiry is

---

1. In establishing the standard for awards of punitive damages, the *Tuttle* court indicated that "where a criminal sanction does constitute an adequate deterrent in a given case, there is no justification for adding a civil penalty in the form of punitive damages." *Tuttle*, 494 A.2d at 1356. Defendant argues that, because both Defendant and its driver, Guy Young, have been charged with manslaughter, punitive damages are not justified in this case. The Court concludes that, at this stage in the proceedings, the "sensible solution is to allow the fact finder to consider evidence of any criminal punishment imposed for the conduct in question as a mitigating factor on the issue of punitive damages." *Id.*

whether East Coast Steel's conduct was sufficiently outrageous such that malice may be implied." Plaintiff's Objection to Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law ("Plaintiff's Objection") (Docket No. 6) at 1. Defendant argues that "plaintiff's allegations, taken in a light most favorable to her, amount to no more than a claim of recklessness or deliberate indifference and are insufficient to support an award of punitive damages." Defendant's Motion at 4.

In *Tuttle*, the plaintiff was seriously injured in an automobile accident when the defendant's vehicle collided with the automobile in which she was a passenger. *Tuttle*, 494 A.2d at 1354. The car in which the plaintiff was riding was sheared in half by the force of the impact. *Id.* According to the evidence presented at trial, "the jury could have found that the defendant was driving at an excessive speed in a 25 mile per hour zone when he struck the [plaintiff's car], and that the defendant went through a red light just before the impact." *Id.* The court concluded that "the evidence shows that the plaintiff was seriously injured by the defendant's reckless operation of an automobile." *Id.* at 1362. In vacating the jury's award of punitive damages, the court held that "deterrence—recognized by this Court as '*the* proper justification' for punitive damages—cannot justify imposing an exemplary award in addition to compensatory damages and possibly criminal sanctions based solely upon a defendant's reckless disregard of the circumstances." *Id.*

In *Kelleher v. Boise Cascade Corp.*, 683 F.Supp. 858, 859 (D.Me.1988), the plaintiff sought punitive damages for injuries sustained while he was diving in the run-off tanks at the defendant's paper mill. The plaintiff asserted that he was entitled to punitive damages because the defendant knew of and failed to warn the plaintiff of the potential dangers associated with diving in its tanks and because the defendant's conduct in maintaining the run-off tanks was malicious. *Id.* In granting summary judgment for the defendant on the punitive damage counts, this Court held that "while the facts alleged may indicate that Defendant

acted recklessly, the factfinder could not imply malice as a result of Defendant's conduct." *Id.* at 860.

Defendant argues that *Tuttle* and *Kelleher* support a determination that Plaintiff cannot prove that Defendant's conduct was sufficiently outrageous to warrant an award of punitive damages. Defendant further asserts that "[t]here is no legal or factual basis upon which the present case may be distinguished from either *Tuttle* or [*Kelleher*]." Defendant's Reply Memorandum in Support of Motion for Summary Judgment (Docket No. 9) at 2. The Court, however, disagrees.

The instant case is distinguishable from *Tuttle* because a reasonable factfinder, taking Plaintiff's allegations in a light most favorable to her, could conclude that Defendant's conduct exceeded reckless disregard of the circumstances. Rather, Defendant could be viewed as having deliberately generated a set of circumstances which it knew to be extremely dangerous to other drivers and, further, which was prohibited by law for precisely that reason. A jury could conclude, by clear and convincing evidence, that Defendant's actions on November 8, 1995, created a temporary zone of danger from which it was highly unlikely that *any* traveler on the affected portion of Route 9 could escape.

Likewise, the present case can be distinguished from *Kelleher* because a reasonable factfinder could find by clear and convincing evidence that, unlike the defendant in *Kelleher* which failed to warn the plaintiff of known dangers and to address problems with its run-off tanks, Defendant knowingly and deliberately created an extremely dangerous situation for which no warning was even possible and thereby exceeded reckless disregard of the circumstances. *See* Affidavit of Peter W. Culley (Docket No. 8) Ex. C at 4 (police officer positioned approximately 134 feet from the "I" beam stating "[w]ith all the emergency vehicles at the scene and with all their emergency lights and running lights on, Trooper Mongue and I commented to each other that we could not see the I-beam. The point I'd like to make is that we were stationary, had many more lights available than did [Mr. Lehouillier], and we both knew the I-

beam was there and yet, we could not see it.").

The Court determines that the facts alleged, taken in the light most favorable to Plaintiff, could lead a jury to conclude that Defendant's conduct surpassed mere recklessness and entered into the realm of outrageousness. A factfinder could reasonably find by clear and convincing evidence that, rather than recklessly disregarding the circumstances, Defendant, by knowingly and affirmatively creating a hidden, life-threatening situation in the nighttime on a public roadway, in violation of the specific terms of its permit and of the law, engaged in conduct which can be properly characterized as outrageous. The deliberate creation of a solid steel wall completely blocking a public highway in violation of the law and in circumstances such that it could not be seen in time to avoid collision may be properly seen as conduct from which malice may be implied. This Defendant's regular business activities consist, in part, of transporting steel beams. This is, therefore, the sort of case for which an award of punitive damages could serve as an important deterrent, for both this Defendant and other companies engaged in similar activities. Because there are genuine issues of material fact relevant to the determination of whether Defendant's conduct was sufficiently outrageous to warrant an award of punitive damages, summary judgment on Count III is inappropriate.[2]

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant's Motion be, and it is hereby, DENIED.

---

**2.** The Court notes that a significant number of the factual issues involve Defendant's state of mind. "Great circumspection is required where summary judgment is sought on an issue involving malice, since a defendant's state of mind is difficult to prove." *Kelleher*, 683 F.Supp. at 859 (citations omitted). While asserting a cause of action to which the defendant's state of mind is a material element does not automatically entitle the plaintiff to a trial, the Court determines that the issues of fact in the instant case, if resolved in Plaintiff's favor, could enable the jury to infer malice on the part of Defendant.