STATE OF MAINE                                         SUPERIOR COURT
                                                         CIVIL ACTION
YORK, ss.                                         DOCKET NO: CV-05-094


LEANNE BERNIER,

                    Plaintiff

        v.                                        ORDER ON MOTION
                                                  FOR SUMMARY JUDGMENT

MOXIE GORE PRIMITIVE
CAMPS & TENT SITES, ET AL,

                    Defendants


        This case comes before the Court on Defendants Moxie Gore Primitive Camps &

Tent Sites, Inc., Daniel Burgess, Carolyn Burgess, and Kenneth Burgess' ("Moxie")

motion for partial summary judgment on counts II (breach of warranty of habitability)

and III (punitive damages) of Plaintiff Leanne Bernier's complaint.   Following hearing,

the motion is Granted.

                                UNDISPUTED FACTS

        Moxie is an enterprise which rents cabins and tent sites on the Kennebec River.

Daniel, Carolyn, and Kenneth Burgess are the owners of Moxie.  Leanne Bernier rented

a cabin from Moxie in May 2003.  The cabin was a two-room building with a kitchen

and a bedroom. The cabin was serviced by gas fired appliances, including propane

lights, a propane heater, and a propane refrigerator.  Daniel Burgess resided in the

cabin, utilizing the appliances, beginning in the fall of 2002 until he turned possession

over to Ms. Bernier in May 2003.  Previously, Mr. Burgess was employed as a fire

inspector, and then a fire marshal by the Sanford Fire Department.  He received training

in the hazards of carbon monoxide.

Before Ms. Bernier took possession of the cabin, Mr. Burgess explained that the pilot lights from the gas-fired appliances produced carbon monoxide. Nevertheless, Ms. Bernier suffered from carbon monoxide poisoning resulting in a number of severe and permanent physical injuries, including brain damage and neuro-cognitive deficits. Once advised that Ms. Bernier had been to the hospital, Mr. Burgess immediately had the propane appliances in the cabin inspected. Prior to this incident, Mr. Burgess was unaware of any injuries or hospitalizations due to carbon monoxide exposure from a propane appliance or any other source at the camps. (Def. SMF ¶ 23).

Ms. Bernier filed a three-count complaint alleging negligence (count I), breach of warranty of habitability (count II), and punitive damages (count III).

## DISPUTED FACTS

The parties dispute whether Mr. Burgess told Ms. Bernier that he had removed a carbon monoxide detector from Ms. Bernier's cabin because it had been alarming frequently. (Pl. SMF § 1). Ms. Bernier asserts that Mr. Burgess told her that he had removed a carbon monoxide detector that had been placed in the cabin because the propane lights frequently set it off. (Pl. SMF ¶ 12). As a result of this statement, Ms. Bernier asserts that Mr. Burgess was on notice of the potential for the release of dangerous levels of carbon monoxide into the air. (Pl. SMF ¶ 22).

The parties also dispute whether Mr. Burgess had experienced problems with the particular propane refrigerator that was in Ms. Bernier's cabin. (Def. SMF ¶ 12). Ms. Bernier claims that Mr. Burgess did experience occasions of fouling with that particular refrigerator.[1] (Pl. SMF ¶ 2; Burgess Dep. p. 8-12). In response, Mr. Burgess explains that

---

[1] Mr. Burgess explained that "fouling" is a visible malfunctioning of the machine that could lead to carbon monoxide emission, which tends to be colorless and odorless.

2

the passages cited by Ms. Bernier refer to another refrigerator that he owned. The Court agrees.

In deposition, Mr. Burgess testified that he bought propane refrigerators in 1999 in the anticipation of building a camp. (Burgess Depo p. 8). He installed one in another camp that he leased temporarily. (Burgess Depo p. 8). That refrigerator fouled on two occasions on the leased land. (Burgess Depo p. 9). When he bought the Moxie camp, he removed the refrigerator from the leased land. (Burgess Depo p. 93). His best guess is that the fouling refrigerator from the leased land was not transferred to the cabin Ms. Bernier rented, but rather to another cabin. (Burgess Depo p. 93). He installed another refrigerator that he purchased in 1999 in Ms. Bernier's cabin in the fall of 2002. (Burgess Depo p. 96). He used that refrigerator in Ms. Bernier's cabin while he lived there on and off beginning in the fall of 2002 until May 2003. (Burgess Depo pp. 99-100).

## DISCUSSION

In support of its motion for partial summary judgment on count II, Moxie contends that even if Ms. Bernier's recitation of the facts were true, she is unable to establish the elements for a breach of implied warranty of habitability pursuant to 14 M.R.S.A. § 6021(3). As for count III, Moxie contends that the alleged conduct of Moxie does not rise to the level necessary to assess punitive damages under *Tuttle v. Raymond*, 494 A.2d 1353, 1359 (Me. 1985).

A moving party is entitled to summary judgment if the evidence demonstrates that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. M.R. Civ. P. 56 (c); *In Re Estate of Davis*, 2001 ME 106, ¶ 7, 775 A.2d 1127, 1129. A material fact is one that has the potential to affect the outcome of the suit. *Kenny v. Dep't of Human Services*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562. A

3

genuine issue exists if sufficient evidence supporting the claimed factual dispute requires a choice between the parties' differing versions of the truth at trial. *Id.*

a.   Implied Warranty of Habitability (count II)

In order to survive summary judgment on this count, Ms. Bernier must establish that Moxie 1) was on notice of the unreasonably dangerous condition or defect rendering the building uninhabitable, 2) and that Moxie failed to repair or remedy the condition. 14 M.R.S.A. § 6021(3).[2] It is undisputed that once advised that Ms. Bernier had been to the hospital, Moxie had the propane appliances in the cabin inspected. The only issue then is whether Moxie was on notice of the unreasonably dangerous condition or defect rendering the building uninhabitable.[3]

Ms. Bernier contends that Mr. Burgess was on notice that the refrigerator in Ms. Bernier's cabin had fouled two times in the past, which consequently placed him on notice of the unreasonably dangerous condition. Further, at oral argument, she argued

---

[2]   14 M.R.S.A. § 6021(3) COMPLAINTS. If a condition exists in a dwelling unit which renders the dwelling unit unfit for human habitation, then a tenant may file a complaint against the landlord in the District Court or Superior Court. The complaint shall state that:

A. A condition, which shall be described, endangers or materially impairs the health or safety of the tenants;

B. The condition was not caused by the tenant or another person acting under his control;

C. Written notice of the condition without unreasonable delay, was given to the landlord or to the person who customarily collects rent on behalf of the landlord;

D. The landlord unreasonably failed under the circumstances to take prompt, effective steps to repair or remedy the condition; and

E. The tenant was current in rental payments owing to the landlord at the time written notice was given.

The notice requirement of paragraph C may be satisfied by actual notice to the person who customarily collects rents on behalf of the landlord.

[3]   Both parties agree that 14 M.R.S.A. § 6021(4) precludes an award of consequential damages and allows only for the recovery of the value of fair use and occupancy of the camp, i.e., rent paid.

4

that because Mr. Burgess did not keep track of the serial numbers of the refrigerators, there is a genuine issue of fact as to whether the refrigerator that experienced fouling was placed in Ms. Bernier's cabin.

The Court thoroughly reviewed Mr. Burgess' deposition. While Mr. Burgess admitted that he did not keep track of the serial numbers of the refrigerators, (Burgess Depo p. 97), he consistently testified in other passages that the refrigerator that experienced fouling was not placed in Ms. Bernier's cabin. (Burgess Depo pp. 93, 96). Ms. Bernier has not controverted these statements. Although it is clear that Mr. Burgess had experienced fouling in the past with a refrigerator that was the same make and model as the one in Ms. Bernier's cabin, this alone cannot support a claim that he had knowledge that the refrigerator in Ms. Bernier's cabin presented an unreasonably dangerous condition. Accordingly, summary judgment is appropriate on this count.

b.    Punitive Damages (count III)

In order to survive summary judgment on this count, Ms. Bernier must establish by clear and convincing evidence that Mr. Burgess' conduct in removing the carbon dioxide detector because it alarmed frequently was so outrageous that it rises to the level of implied malice.

Under Maine law, punitive damages are available based upon tortious conduct only if the plaintiff proves by clear and convincing evidence that the defendant acted with actual or implied malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1361, 1363 (Me. 1985). Implied malice is conduct motivated by something other than ill will toward any particular party and is so outrageous that malice toward the injured person as a result of the conduct can be implied. *Id.* at 1361. The Law Court expressly rejected a standard that would permit an award of punitive damages on the basis of grossly negligent or

5

reckless conduct. *Id.* Such a broad standard would, "dull[] the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." *Id.*

In other landlord/tenant cases, the Law Court has upheld punitive damages awards against landlords who knew of dangerous conditions occurring in their rental units and failed to remedy them. In *Newbury v. Virgin*, punitive damages were upheld when a landlord locked a tenant out and left for Florida, unlawfully retained business equipment, and denied a tenant access to insulin. 2002 ME 119, 802 A.2d 413. In *Harris v. Soley*, punitive damages were upheld when a landlord failed to remedy cockroach and rodent infestation, dead animals under the floorboards, and snow falling through the apartment. 2000 ME 150, ¶¶ 39-32, 756 A.2d 499, 508-09. In these cases, the Law Court held that these landlords engaged in conduct so outrageous that punitive damages were warranted.

In *Lehouiller v. East Coast Steel*, the United States District Court for the District of Maine distinguished between a mere reckless disregard of the circumstances and outrageous conduct. 13 F. Supp. 2d 109 (D. Me. 1998). In *Lehouiller*, the defendant violated the terms of a permit by transporting a 120-foot "I" beam on a tractor-trailer at night without a police escort and without lights or reflective markings attached to it. *Id.* at 110. The nearly invisible beam struck an oncoming vehicle killing the driver. *Id.* The District Court held that the defendant's conduct could be viewed as having deliberately generated a set of circumstances, which it knew to be extremely dangerous to other drivers, and was prohibited by law for precisely that reason. *Id.* As such, that court held that

"a fact finder could reasonably find by clear and convincing evidence that rather than recklessly disregarding the circumstances, [the defendant], by knowingly and affirmatively creating a hidden, life-threatening situation in the nighttime on a public

roadway, in violation of specific terms of its permit and of the law, engaged in conduct which can be properly characterized as outrageous."

In the instant case, Ms. Bernier's primary factual basis for asserting implied malice is based on an alleged statement from Mr. Burgess to Ms. Bernier indicating that he had removed a carbon monoxide detector in the cabin because it had been frequently set off. Ms. Bernier likens these facts to those of *Lehouiller* by arguing that the removal of the carbon monoxide detector knowing that it had been frequently set off was outrageous conduct in that it created a hidden life-threatening situation. However, this Court is not convinced that the facts taken in a light most favorable to Ms. Bernier could lead a jury to conclude that Moxie's conduct surpassed mere recklessness and entered into the realm of outrageousness.

The instant case is distinguishable from *Lehouiller*. First, Maine does not require that carbon monoxide detectors be present in rental units. As such, the removal of the carbon monoxide detector did not violate a regulation or a law. Second, the undisputed facts show that at the time Ms. Bernier took possession of the camp, there had never been, to Moxie's knowledge, an incident of unsafe levels carbon monoxide emission in any of the cabins Moxie rented out. Although Mr. Burgess did experience fouling with another propane refrigerator in the past, he did not experience problems with the propane refrigerator in the cabin that Ms. Bernier rented. In fact, he lived in that cabin shortly before Ms. Bernier moved in and did not experience problems with the refrigerator. As such, a fact finder could not find by clear and convincing evidence that Mr. Burgess knowingly and affirmatively created a hidden, life-threatening situation. Furthermore, the fact that Mr. Burgess explained the potential dangers of propane appliances to Ms. Bernier before she moved in runs contrary to the suggestion that his

7

conduct was outrageous. Rather, it demonstrates that he was aware of the potential dangers of carbon monoxide and acted to inform his tenants of these potential dangers.

While the facts alleged may indicate that Moxie acted recklessly, a fact finder could not imply malice as a result of Moxie's conduct. "Reckless conduct alone cannot satisfy the element of malice necessary to justify an exemplary award." *Tuttle*, 494 A.2d at 1364. The events that occurred at the Moxie cabin, while extremely unfortunate, cannot, as a matter of law, be said to have occurred out of sufficiently outrageous conduct to justify the imposition of punitive damages.

The entry is as follows:

Defendants' motion for summary judgment is GRANTED on counts II and III.

DATE: 7/29/02

G. Arthur Brennan
Justice, Superior Court

Gregory P. Hansel, Esq. - PL
Robert O. Newton, Esq. - PL
Jeanne B. McHale, Esq. - PL
David Sherman, Esq. - DEFS
Peter C. Felmly, Esq. - DEFS